**People of the State of Illinois, Plaintiff-Appellee, v. Juan R. Tolentino (Impleaded), Defendant-Appellant.**

**Gen. No. 50,444.**

First District, Third Division.

February 10, 1966.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Marshall A. Patner, Frederick F. Cohn and

480

James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and E. James Gildea, Assistant State's Attorneys, of counsel), for appellee.

· MR. JUSTICE DEMPSEY delivered the opinion of the court.

Two indictments were returned against Juan Tolentino and Robert Medino. One charged them with the robbery of Robert P. O'Connor, the other with the robbery of John R. Logan. They entered pleas of not guilty and waived trial by jury. The indictments were tried together. The trial court found them not guilty of either robbery but found them guilty of "the lesser included offense of theft" of the property of O'Connor. They were found not guilty of theft as to Logan.

Tolentino was sentenced from three to seven years in the penitentiary and this appeal is by him alone. He contends that his conviction should be reversed because (1) the trial court's finding that he was guilty of theft is inconsistent with the court's own explicit findings of fact and (2) the indictment was invalid.

In the early morning of January 12, 1964, O'Connor and Logan spent four hours drinking in a tavern on West Madison Street, Chicago. When the tavern closed at 5 a. m. they went to a restaurant at Halsted and Madison Streets and stayed there for a half hour. When they left the restaurant they walked west on Madison. O'Connor had $40 and some small change on his person; $34 of the $40 was in his key case. Logan had about $45 with $40 of that being in a separate pocket.

O'Connor next remembered waking up in a hospital. Logan saw O'Connor struck in the back of the head and he was struck in the front of the head at the same time.

481

He also came to in the hospital. O'Connor had a cut on the side of his head and Logan had a cut on the front of his head which required 17 stitches. Neither had seen the assailants nor the instruments with which they were struck. O'Connor was missing his key case, the money therein and some change; Logan was missing $5 or $6 in currency.

Two Chicago police officers were driving eastward on Madison at about 5:30 a. m. As they approached Halsted they saw two men bent over two other men lying on the sidewalk on the northwest corner of the intersection. There was no one else in the vicinity. The two men on their feet were Tolentino and Medino and the two prostrate, bleeding men were O'Connor and Logan. The officers observed Tolentino going through Logan's pocket and saw him hand something from the pocket to Medino. The two ran when the officers approached. Immediately prior to being taken into custody, Tolentino threw some money to the ground. He was searched and the money thrown on the ground together with the money on his person totaled $3.04. He had blood on his hands. Medino was also apprehended and searched; a key case containing $34, $12 in currency and some change were found on his person. The victims were taken to the hospital and when they regained consciousness O'Connor identified the key case found on Medino and the $34 as his. Two hours later the officers searched the area where the crime was committed but found no weapons.

Tolentino testified that on the morning of January 12, 1964, he had been drinking beer in West Madison Street taverns and that from 4:30 to 5:00 a. m. he had been with a friend, Lorenzo Ramirez. He said they got in Ramirez' auto to drive to the south side but that he changed his mind and they returned to Madison and Halsted, where Ramirez parked his auto and waited while he went to get some coffee. He related that on his way to the restaurant he observed a fight between four persons at

the corner. He said he watched the fight for 15 minutes, during which time two men knocked down and kicked the two complaining witnesses and then ran off. He denied striking Logan and O'Connor, denied going through their pockets and stated that the first time he saw Medino was when they were arrested.

Ramirez corroborated Tolentino's testimony in part. He testified that he met him in a tavern and that Tolentino was drunk at the time. He said they left the tavern at 5:00 a. m., drove a few blocks and turned around and went to Madison and Halsted Streets. He said he waited in his car for 15 minutes and when Tolentino did not return he went home.

Medino denied knowing Tolentino. He said he was in the restaurant on the corner, noticed four men fighting and went outside to watch. Two of the four men were Logan and O'Connor. He said he did not see Tolentino in the fight nor did he see Tolentino standing next to him when he bent over to assist the victims. He explained that he ran when the police approached because he couldn't afford to be investigated.

It is argued that the court was inconsistent in finding the defendant guilty of theft and not guilty of robbery, and in finding him guilty of theft from O'Connor and not guilty of theft from Logan. In making these findings the court gave the defendant the benefit of every doubt. Where the record contains evidence upon which a finding of theft may be made, the fact that the evidence would have justified the court in finding the defendant guilty of robbery is not a matter of which the defendant can complain. The record also would have justified a finding of guilty of theft from Logan. The defendant cannot complain that he was found not guilty of stealing Logan's money when he could have been found guilty of doing so. O'Connor's key case and the $34 within it were more readily identifiable than the currency lost by Logan, and

the court resolved any doubt in favor of the defendant by finding him guilty of theft from O'Connor only.

Although the key case was found on Medino, the evidence showed Tolentino's complicity in the crime. A person is legally accountable for the conduct of another when during the commission of an offense, with the intention to facilitate such commission, he aids or abets such other person in the commission of the offense. Ill Rev Stats 1963, c 38, par 5–2; People v. Valentine, 60 Ill App2d 339, 208 NE2d 595 (1965). Both Tolentino and Medino were seen hovering over the robbery victims; Tolentino was seen going through the pockets of one of them; he passed something to his confederate, fled when he saw policemen coming and had blood on his hands. The evidence established his guilt of theft from O'Connor as much as it did Medino's, from whose person O'Connor's possessions were recovered.

The court's findings were not inconsistent with the evidence and they were not inconsistent with the indictment. The court found the defendant "guilty of the crime of theft . . . being a lesser included offense in indictment 64–603," and specifically found him guilty of the "offense of theft by obtaining unauthorized control over the property of Robert O'Connor, being $34 in United States currency and a key case taken from him . . . in violation of Chapter [sic] 16–1, Paragraph A, Chapter 38 of the Illinois Revised Statutes 1963." In determining the meaning of a finding of guilty the entire record will be searched and all parts of it interpreted together. Cf. People v. Bailey, 391 Ill 149, 62 NE2d 796 (1945). From the sentence imposed (three to seven years in the penitentiary) it is obvious that the "lesser included offense" found by the court was not just the theft of $34 and a key case, but the theft of this property from the person of O'Connor. The defendant's sentence was in conformity with the penalty provided for this aggravated form of theft. Ill Rev Stats 1963, c 38, par 16–1.

■ The difference between theft from the person and robbery lies in the force or intimidation used in robbery and the absence of such force or intimidation in theft. People v. Ryan, 239 Ill 410, 88 NE 170 (1909). An indictment may be so drawn as to charge in one and the same count the offense of robbery and also the offense of theft, and the defendant may be convicted of either offense, according as it may be shown by the evidence, and a description and value may be alleged and proved which would be necessary in a charge of theft but would be immaterial on a charge of robbery and could be rejected as surplusage on that charge. People v. Keene, 391 Ill 305, 63 NE2d 509 (1945); People v. Rusk, 348 Ill 218, 180 NE 863 (1932). The indictment charged that the defendants:

> ". . . committed the offense of robbery in that they, by the use of force and by threatening the imminent use of force, took thirty-four dollars . . . and a key case from the person . . . of Robert P. O'Connor. . . ."

The indictment as drawn, although in a single count, charged robbery, theft and an aggravated form of theft—theft from the person. It charged robbery by alleging the use of force in the taking of the property; it charged theft by describing and alleging the value of the property taken, and it charged theft from the person by alleging that the property was taken from the person of O'Connor. The lesser offenses of theft and theft from the person were included in the charge of robbery and came within the purview of the statute which defines an "included offense" as one which:

> "(a) Is established by proof of the same or less than all of the facts or less culpable mental state (or both), than that which is required to establish the commission of the offense charged. . . ." Ill Rev Stats 1963, c 38, par 2–9.

There is no merit to the defendant's remaining contention that the indictment is invalid because it failed to specify the time and place of the offense. People v. Blanchett, 33 Ill2d 527, 212 NE2d 97 (1965).

The defendant was properly convicted of the offense of theft and properly sentenced for the aggravated offense of theft from the person. The judgment will be affirmed.

Affirmed.

SULLIVAN, P. J. and SCHWARTZ, J., concur.