People of the State of Illinois, Plaintiff-Appellee, v. Luke McKinney and Leonard Tucker, Defendants-Appellants.

Gen. No. 53,939.

First District, Third Division.

June 4, 1970.

Sam Jaffe and Charles Tannen, of Chicago, for appellants.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Assistant State's Attorney, of counsel), for appellee.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

The defendants, Luke McKinney and Leonard Tucker, were indicted with a third man, Ned Owens, for robbery. McKinney was also indicted for aggravated battery. McKinney and Tucker were found guilty in a nonjury trial of the lesser included offense of attempt to commit robbery, and were sentenced to prison terms of ten to fourteen years. McKinney was also convicted of aggravated battery and given a concurrent penitentiary sentence of from one to five years. The defendants contend they were not proven guilty of attempt robbery beyond a reasonable doubt and that they were sentenced without a hearing in aggravation and mitigation. McKinney further contends that he was improperly sentenced because the offenses for which he was convicted were part of the same act.

About 9:20 a. m. on December 21, 1962, Mae Scott, the owner of a Chicago tavern agreed to cash a $90.26 check for a customer named L. B. Bowie. About 15 to 18 people were in the tavern. She laid the money on the back bar near the cash register because Bowie had gone to a telephone booth located at the north end of the bar near the front entrance. At this time Tucker entered the tavern and bought a package of cigarettes. As Mrs. Scott gave Tucker his change, McKinney entered the tavern, fired a shot and came behind the bar. She asked him what was going on. When he shot again,

Mrs. Scott ran into a storeroom at the south end of the bar. Bowie emerged from the phone booth as McKinney came in. McKinney shoved him, hit him on the head with the gun and fired a shot which struck a stove next to him. Bowie ran to the storeroom where Mrs. Scott had taken refuge. McKinney followed them. He struck Mrs. Scott across the face with his gun and as she fell, fired a shot over her head. He fired a fourth time and the bullet struck Bowie in the arm. He then ran behind the bar, turned over whiskey bottles, grabbed the money on the back bar and ran out the front door.

While this was going on, Tucker stood in the middle of the floor with a gun in his hand. The patrons scurried out of the tavern and the police department was notified. Raymond Kozakowski, a driver of a beer truck who had made a delivery to the tavern, was waiting to be paid. When he heard the shooting, he thought a fight had broken out and he started to leave. He was met at the front door by Owens who shoved him, drew a gun and said "get back there . . . get in the washroom." Kozakowski went to the washroom and while there he heard a scream and more shooting. When he came out he saw Mrs. Scott and Bowie. She had a long, bleeding gash near her eye and Bowie was holding his arm.

The men fled in an auto. Its description had been radioed to police cars and Sergeant Dominic Ronchetto of the Chicago Police Department saw it, pursued it and stopped it. He ordered the three occupants out and searched them. He found two guns on Tucker and a third gun in the auto near where McKinney had been sitting. Owens, the driver of the car, had no weapon. Less than $20 was found on the three men. They were arrested at 9:40 a. m., placed in lineups and identified: Tucker, McKinney and Owens by Kozakowski; Tucker and McKinney by Mrs. Scott and Bowie.

Tucker and McKinney admitted being in the tavern. Tucker testified that on the morning of the affray he

was with McKinney and Owens and left them to buy some cigarettes. More than 30 people were in the tavern and the bar was crowded. As he received his change he heard gunshots and ran to the rear with everyone else. He looked over his shoulder and saw McKinney fighting with the man up in front. He then left, joined Owens, who was standing outside, and got in Owens' auto. McKinney testified that he also entered the tavern to purchase cigarettes. Before he could make his purchase a patron jumped up, started to holler that he was the wrong fellow and grabbed McKinney. They scuffled and others, including a woman, joined in the fray. He drew his revolver after the woman struck him, and tried to fight them off. Some people were hit, the gun went off when someone snatched it and he got loose and fled. After both defendants testified, the State introduced into evidence exemplified copies of their criminal records.

It is the defendants' contention that an altercation occurred in the tavern, but no robbery or attempt robbery. They point out that there was no demand for money and that none of the witnesses thought a robbery was taking place: Mrs. Scott asked McKinney what he was doing, Kozakowski thought a fight was in progress, Bowie testified (at the preliminary hearing) that when McKinney shoved him he kept saying, "You don't know nothing about me, you don't know nothing about me," and none of these witnesses equated the altercation with a robbery until they discovered the $90.26 was missing. The defendants argue further that it was not proved who took the money: they had only $10 to $20 among them when arrested and no money was found in their car; that although Mrs. Scott testified she saw McKinney take the $90.26 from the back bar, she said at the preliminary hearing she did not know who took it. Finally, the defendants point out that the trial judge found them guilty only of attempt robbery which, they logically urge,

199

shows that he was not convinced that they robbed anyone of any money.

█ Robbery is committed when a person takes property from the person or presence of another by the use of force or by threatening the imminent use of force. Ill Rev Stats 1969, c 38, par 18–1. A person commits attempt robbery when with intent to commit robbery he does an act which constitutes a substantial step toward its commission. Paragraph 8–4. He acts with intent when his conscious objective is to engage in that conduct. Paragraph 4–4. His intent may be inferred from his words and actions and other circumstances. People v. Uselding, 107 Ill App2d 305, 247 NE2d 35 (1969).

██ In acquitting the defendants of the robbery charge, the trial judge gave them the benefit of the doubt created by Mrs. Scott's contradictory testimony and the fact that $90 was not found in their possession. In finding the defendants guilty of attempt robbery the judge concluded that their intent in entering the tavern was robbery. This conclusion was fully supported by the evidence. McKinney and Tucker came into the tavern armed with revolvers while Owens, also armed, guarded the front entrance. Although words such as "hold-up" or "stick-up" were not used, McKinney started shooting at once and Tucker drew his gun. McKinney admitted in his testimony that he went behind the bar. When Kozakowski tried to leave by the front door Owens ordered him to the washroom. An immediate robbery may have been frustrated by Mrs. Scott and Bowie running into the storeroom. McKinney, apparently fearful that weapons might be secured, chased after them and slugged one and shot the other. By this time all the patrons had hurried out and there was imminent danger that police officers would be arriving. McKinney, in his haste to leave, knocked over liquor bottles and, with Tucker, rushed out. When a case is tried without a

200

jury, the trial court must determine the credibility of the witnesses and the weight to be given their testimony. Unless the evidence is so unsatisfactory that a reasonable doubt is raised of the defendant's guilt, the finding of the court will not be overturned. People v. Pendleton, 75 Ill App2d 314, 221 NE2d 112 (1966). The entire conduct of the defendants demonstrates that their purpose was robbery and that substantial steps were taken to accomplish this purpose. The court's finding that they were guilty of attempt robbery was within the range of the evidence and will not be disturbed.

After finding the defendants guilty, the court inquired: "Are there any matters in aggravation or mitigation that either the State or the defense counsel wish to bring to the attention of the Court at this time?" The defense said nothing. The assistant State's attorney asked for a recess in order to file a petition to sentence the appellants as habitual criminals. When court reconvened no petition was presented and the sentences were imposed. The defendants now contend that they were sentenced without a hearing in aggravation and mitigation as required by Ill Rev Stats 1961, c 38, § 1–7 (g).

■ ■ The burden of presenting mitigating evidence is on the defendant. The defendants were given the opportunity to present mitigating circumstances before the court recessed and they did not do so. Their failure to proceed at that time and their failure to request a mitigation hearing after the court reconvened constituted a waiver of such a hearing. People v. Nelson, 41 Ill2d 364, 243 NE2d 225 (1968); People v. Smith, 62 Ill App 2d 73, 210 NE2d 574 (1965).

■ The final argument, on behalf of McKinney only, is that the court erred in imposing sentences on him for aggravated battery and attempt robbery because both offenses were part of the same act. Criminal offenses arising from the same conduct may not be pun-

201

ished separately, regardless of whether the sentences are consecutive or concurrent. Ill Rev Stats 1961, c 38, par 1–7(m) ; SHA, c 38, § 1–7; People v. Schlenger, 13 Ill App2d 63, 147 NE2d 316 (1958) ; People v. Weaver, 93 Ill App2d 311, 236 NE2d 362 (1968). In the present case, however, more than one act was involved. The offense of aggravated battery, committed at the entrance of the storeroom, was an act separate and distinct from the offense of robbery or attempt robbery. The court did not err in imposing sentences for both aggravated battery and attempt robbery, and the judgment will be affirmed.

Affirmed.

SCHWARTZ and McNAMARA, JJ., concur.