THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RONALD M. STEPTOE (Impleaded), Defendant-Appellant.

First District (3rd Division) No. 60964

Opinion filed February 10, 1976.

James J. Doherty, Public Defender, of Chicago (Daniel Radokowiz and Suzanne M. Xinos, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and James S. Veldman, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

Ronald Steptoe was found guilty by the court of attempted robbery and was given a prison term of one to two years. He contends that he was not proven guilty beyond a reasonable doubt and that trial errors contributed to his conviction.

Late in the afternoon on March 24, 1972, Steptoe, his co-indictee Clarence Lymore, and another man who was never apprehended, entered the Kenwood Currency Exchange in Chicago. The third man

waited at the door while Steptoe and Lymore walked into the exchange. Delores Morris, one of the cashiers on duty, testified that Steptoe, whom she had seen many times before, went to a counter near where she worked and picked up a chain which had a pen attached to it. Although she could see only his back and part of his side and did not see him holding a pen, he appeared to be writing. When she saw him hand Lymore a brown paper bag, she became suspicious and advised the customer at her window to leave the exchange. Lymore took the paper bag to the next window where another cashier, Patricia Dixon, was working and pushed the bag through the opening. On the bag was written, "This is a stickup. Give me all the money. No change." Miss Dixon testified that she first thought Lymore was joking and pushed the bag back. After the bag had been pushed back and forth two more times, she showed the note to Mrs. Morris and said, "[T]his man is playing with me." Mrs. Morris responded, "No he isn't. This is a stickup," and told her to phone the police. When Miss Dixon went to make the call, Lymore began pounding on the window demanding the money. Then, according to the testimony of both cashiers, Steptoe went to the door and called, "Come on." Lymore ran to the door and the three men left the exchange together.

Steptoe admitted being in the currency exchange when the trouble arose, but he said that he went there to cash a welfare check he had received that day. He testified that he did not know Lymore but that he said hello to him after Lymore asked him how he was feeling. He then walked to a counter to endorse his check but before he could cash it he saw Lymore pounding on the cashier's window. He then headed for the door and as he went out he heard a man standing there say, "Come, on." The next day he cashed his check at another currency exchange.

In rebuttal to Steptoe's assertion that he was in the exchange on March 24 to cash the welfare check he received that day, the State presented the testimony of Cyrilla Leahy, a supervisor in the general assistance check division of the Cook County Department of Public Aid. She said that the check sent to Steptoe was dated March 24, 1972, and that although checks were sometimes sent out before the day they were dated, Steptoe's could not have been. She explained that his check was one of about 3,500 checks due for mailing on March 24; and that, given the check division's limited personnel and the large volume of checks requiring processing, his check could not have been mailed to him earlier than the morning of March 24. In corroboration of Mrs. Leahy's testimony, the State offered into evidence a copy of a record indicating that Steptoe's check had been sent along with other checks to the post office

for mailing around noon on March 24. The court sustained the defendant's objection to the exhibit on the theory that it had no way of knowing whether the exhibit was a true and correct copy of the record.

██ To sustain a conviction for the offense of attempted robbery, the evidence must show a substantial step toward the taking of property from the person or presence of another by the use of force or the threat of imminent use of force and an intent toward that end. (Ill. Rev. Stat. 1973, ch. 38, par. 8—4(a); Ill. Rev. Stat. 1973, ch. 38, par. 18—1(a); *People v. McKinney* (1970), 126 Ill. App. 2d 196, 261 N.E.2d 462.) The defendant argues that the State's evidence was insufficient to prove him guilty of this offense because Miss Dixon's testimony that she thought Lymore was joking proved that no force was used or threatened. But she also testified that her first impression changed dramatically when he beat on her window and yelled, "Give me the money." She then knew he was serious and she called the police and reported a robbery in progress.

██ The defendant's other "reasonable doubt" argument is equally weak. Mrs. Morris first testified that she saw the defendant writing at the counter. She later conceded that she only presumed he was writing. The change in her testimony hardly means that the trial court should have concluded that this created a reasonable doubt of the defendant's guilt. First, Steptoe admitted that he was writing at the counter; he said he used one of the pens to endorse his welfare check. In light of his testimony, the cashier's inference that he was writing was well justified. Second, Mrs. Morris saw him give the bag to Lymore. Even if he did not write on the bag, his handing it to Lymore was participation in the robbery attempt and this would make him legally accountable for Lymore's actions. (Ill. Rev. Stat. 1973, ch. 38, par. 5—2(c); *People v. Tolentino* (1966), 68 Ill. App. 2d 480, 216 N.E.2d 191.) In a nonjury trial it is in the province of the judge to determine the credibility of the witnesses and the weight to be accorded their testimony. His judgment will only be disturbed where it is based on evidence so unsatisfactory that a reasonable doubt is raised as to the defendant's guilt. (*People v. Garmon* (1974), 19 Ill. App. 3d 192, 311 N.E.2d 299.) From Mrs. Morris' testimony the trial judge could have reasonably concluded that Steptoe either wrote the robbery note and handed it to Lymore or that he handed the bag to him with the intent of helping Lymore rob the currency exchange.

 The defendant next argues that his conviction should be reversed because the State failed to produce the brown paper bag at the trial. The investigating officer who testified, stated that the bag was given to the police department's crime laboratory shortly after the attempted

robbery, that identifiable fingerprints were not found on the bag, and that he had tried to locate it before he came to court but had been unable to do so. The defendant contends that the failure to produce the bag denied him due process of law. The cases cited by him do not support his contention. In *Giles v. Maryland* (1967), 386 U.S. 66, 17 L. Ed. 2d 737, 87 S. Ct. 793, the case was remanded to determine whether the existence of evidence which (although unmentioned in the record) was brought before the court at its request gave rise to a violation of due process in the circumstances of that case. In the instant case there was no evidence that the police were in possession of the bag. *Miller v. Pate* (1967), 386 U.S. 1, 17 L. Ed. 2d 690, 87 S. Ct. 785, involved a case where the prosecution said during the trial that a pair of shorts were blood-stained when it knew from laboratory analysis that the stains were paint. Due process violations have been found where the prosecution purposefully suppressed available evidence that was favorable to the defendant (*People v. Murdock* (1968), 39 Ill. 2d 553, 237 N.E.2d 442) or where the court could reasonably infer that the State had refused to disclose evidence that might exculpate a defendant (*People v. Flowers* (1972), 51 Ill. 2d 25, 281 N.E. 2d 299; *People v. Hoffman* (1965), 32 Ill. 2d 96, 203 N.E.2d 873), but here there was no reason to believe that the State was purposefully hiding the bag. There may be instances where due process would require a new trial if the police lost confiscated evidence through their negligence and thus deprived a defendant of the opportunity of seeing whether the evidence might be helpful in his defense, but this is not one of them.

Related to the due process claim is the argument that the State's failure to produce the bag created a negative inference that the evidence was favorable to the defendant. In some circumstances a failure to produce evidence or call a person as a witness may justifiably give rise to an inference against the State. However, the circumstances of this case and the case law discussed by the defendant provide no support for such an inference (*Cf. People v. King* (1973), 10 Ill. App. 3d 652, 295 N.E.2d 258 (failure of a raped woman to have initially told a detective that she had seen the accused several times before the rape gave rise to a negative inference that the rapist was someone other than the defendant); *People v. Jones* (1966), 73 Ill. App. 2d 55, 219 N.E.2d 12 (unexplained failure to call a police informer as a witness may give rise to an inference against the State); *People v. DiVito* (1966), 66 Ill. App. 2d 282, 214 N.E. 2d 320 (unexplained failure to call a witness may give rise to a negative inference where the complaining party never identified the accused as the robber and another witness to the crime was never called); *People v. Roe* (1965), 63 Ill. App. 2d 452, 211 N.E.2d 552 (victim's failure to

name the defendant as the assailant when he knew the defendant by name and saw the assailant created a reasonable doubt whether the defendant was guilty.) No inference would be justified from the facts of the present case that the police thought the evidence was favorable to the defendant and had purposefully suppressed it.

Another point along the same line is that the defendant was entitled under Rule 412(c) (Ill. Rev. Stat. 1973, ch. 110A, par. 412(c)), to see the bag. The single case cited by the defendant in support of this proposition only requires the State to disclose to a defendant, upon demand, any evidence within its control tending to negate the guilt of the accused. (*People v. Wisniewski* (1972), 8 Ill. App. 3d 768, 290 N.E.2d 414.) As mentioned, there is no indication that the police still had the bag or that its production would tend to exculpate the defendant.

■■ The defendant's next contention is that the trial court improperly considered the record of the mailing dates appearing on the exhibit that was denied admission into evidence. Although the exhibit was not admitted, the State's rebuttal witness, Mrs. Leahy, testified that the Department of Public Aid mailed the check out in lots on certain days; that the department began processing the lot containing Steptoe's check on March 22, 1972; that the department mailed no checks on March 23; and that Steptoe's check, at the earliest, was mailed on March 24. Generally, inadmissible evidence which may be regarded as improper or prejudicial in a jury trial is never regarded as such in a nonjury case where the court is presumed to consider only admissible evidence in reaching its decision. (*People v. De Groot* (1968), 108 Ill. App. 2d 1, 247 N.E.2d 177.) The trial judge specifically stated that he was considering only the testimony of the State's rebuttal witness in finding that the defendant's explanation for being at the currency exchange was not believable:

> "On the defense, Mr. Steptoe did take the stand and gave a reason why he was at the currency exchange. It is my humble reasoning, he was impeached by the evidence presented by the State on rebuttal. According to the testimony of Mrs. Leahy, the checks were not mailed until March 24, 11:00 a.m. It is beyond reasonable doubt in my judgment to believe it was received by Mr. Steptoe on that same day."

The defendant has pointed to nothing in the record that would suggest that the judge, in arriving at his decision, considered the exhibit he had excluded from the evidence.

■■ The defendant's further argument that Mrs. Leahy's testimony was inadmissible because it was part of an unsuccessful attempt to lay a foundation for admitting the exhibit itself, is advanced without citation

of authority and is without merit. No rule of evidence has been brought to our attention stating that testimony, otherwise admissible, becomes inadmissible because it is part of an unsuccessful attempt to have an exhibit considered by the trier of fact.

■■ The final point made by the defendant is that the court erred in permitting Mrs. Leahy to testify because her name was not on the prosecution's list of witnesses. The State does not have to furnish the defense the names of possible rebuttal witnesses. (*People v. Clark* (1973), 9 Ill. App. 3d 998, 293 N.E.2d 666.) The defendant, who did not object to Mrs. Leahy's testifying and who makes no claim that he was taken by surprise, contends in effect that he had an absolute right to be informed of the name of any rebuttal witness. We find no merit in this contention.

The judgment is affirmed.

Affirmed.

MEJDA, P. J., and McNAMARA, J., concur.