THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CLARENCE KING, JR., Defendant-Appellant.

Fourth District   No. 14723

Opinion filed January 18, 1979.

Richard J. Wilson and Charles M. Schiedel, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Robert C. Perry and Jane F. Bularzik, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

Following a jury trial, defendant Clarence King, Jr., was convicted of the offenses of rape, burglary, and robbery, and was subsequently sentenced to concurrent terms of 10 to 30 years on the rape conviction, 3 to 9 years on the burglary conviction, and 2 to 6 years on the robbery conviction.

On appeal, the defendant argues that he was denied a fair trial because of the prosecutor's prejudicial closing argument, that he was not proved guilty of robbery beyond a reasonable doubt, and that the trial court erred in failing to instruct the jury with a proper robbery instruction.

At trial, the complaining witness, Susan Johnson, testified that at approximately 3 a.m., on March 22, 1976, she was awakened by a man who was lying on top of her, with his hands around her throat. She noted that he was a large, black male with dark brown skin, and that he was approximately 5 feet 11 inches tall, weighed about 180 to 190 pounds, had a stocky build, was probably in his early 20's, and had a low voice. Other than this description, she was unable to identify the man. She stated that this individual removed her underwear and raped her. He then pulled out a telephone cord in the bedroom, made Johnson turn over and threw a quilt and blanket up over her head, and told her not to move. After he had left the house, Johnson went to another phone and called the police and told them that she had been raped.

Before going to the hospital, Johnson checked her apartment and found that her purse, which had been on a chair in the kitchen, was missing. She stated that this purse contained a wallet and a checkbook. She was thereafter examined at a local hospital and it was stipulated at trial that the doctor would testify that she appeared withdrawn, was crying quietly, and had complained of being raped.

Other testimony at the trial revealed that on March 22, 1976, the defendant cashed a check for $65 at the Busey National Bank in Champaign. The check was made out to Clarence King and purportedly signed by Susan Johnson. That check was identified as an exhibit at trial by both the defendant and Johnson. Johnson noted that the signature on the check was not hers and that she had signed an affidavit of forgery at the bank on March 30, 1976. The defendant thereafter cashed a second check for $65, which purportedly had been signed by Susan Johnson. Johnson noted in her testimony that she had not signed this check and that on April 7, 1976, she had signed an affidavit of forgery.

At trial, it was stipulated that a handwriting comparison had been made between the writing on the first check and the defendant's handwriting. The results of this comparison, however, were inconclusive. In addition, it was noted that no handwriting samples had been taken from Susan Johnson for comparison purposes.

An FBI fingerprint specialist testified that the fingerprints of the defendant were found on the bottom and top portions of the front side of the first check. Palm prints were located on the reverse side of the check in the lower right-hand corner.

The defendant testified in his own behalf and stated that he had prior convictions for rape, robbery, and burglary. He noted that he had met Susan Johnson in the early part of March 1976, and that he often saw her and had short conversations with her while she was standing in her front yard. He stated that these conversations would concern when Johnson might be available to go out.

The defendant testified that on March 21, 1976, he accompanied Johnson home from a nightclub and that she had asked him to protect her from her boyfriend. According to the defendant, Johnson stated she was willing to pay him for protection, and she wrote him a check for $65. Defendant noted that the handwriting on the back of the check was his handwriting and that he had placed his license number on the check. He further testified that Johnson had given him a second check the same evening, and stated that she had done so because she felt the first check wasn't enough. Following this conversation, the defendant stated that Johnson invited him to come into the bedroom where they had consensual sexual intercourse.

On cross-examination, the defendant was asked if he had done anything to earn the money that Susan Johnson had paid him for protection, and he stated that he had stopped by her residence the next day and spoken with her. He noted, however, that he did not see her again until the day of the trial. In addition, the defendant stated that he recalled telling a police officer who was investigating the rape that he knew a girl named Susan only on a casual basis.

During closing arguments, the State's Attorney made the following comments to the jury:

> "Finally, ladies and gentlemen, the Judge will instruct you that you may consider the prior convictions of the defendant for a limited purpose and a limited purpose only, that of impeaching his credibility. Now what does that mean? Well, ladies and gentlemen. When the defendant takes the stand in this Courtroom, he takes an oath, just like every other witness that sits on that stand, and that oath means that you swear to tell the truth in this Courtroom, that you will respect the law as it applies here in this Courtroom.
>
> And why are prior convictions relevant as to that? Well, ladies and gentlemen, they show what respect he's had for law and the dictates of our society as they're mandated by our laws, on prior occasions, and you may consider those convictions for that purpose."

At the conclusion of these comments, the defense counsel immediately objected and moved for a mistrial. That objection was overruled by the trial court.

The defendant initially argues that these comments were highly prejudicial and improper and denied him a fair trial since the obvious implication of these remarks was that the defendant had a propensity to commit the same type of crimes for which he was on trial.

■■ It has been held that some prior convictions may be admissible as tending to prove that the defendant is not a credible witness when the trial court has been satisfied that the probative value of a prior conviction

outweighs the prejudicial effect that knowledge of the conviction may have on the jury. (*People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695.) However, it is a fundamental concept in the criminal justice system that evidence of past crimes is not admissible to prove defendant's disposition to commit the crime charged. (*People v. Wright* (1977), 51 Ill. App. 3d 461, 366 N.E.2d 1058.) In several cases that have dealt with improper remarks to the jury by the prosecutor, the courts have generally found that the remarks were not prejudicial where the evidence of defendant's guilt was conclusive or overwhelming. *People v. Berry* (1960), 18 Ill. 2d 453, 165 N.E.2d 257, *cert. denied* (1960), 364 U.S. 846, 5 L. Ed. 2d 69, 81 S. Ct. 87; *People v. Stahl* (1962), 26 Ill. 2d 403, 186 N.E.2d 349; *People v. Fields* (1974), 59 Ill. 2d 516, 322 N.E.2d 33, *cert. denied* (1975), 423 U.S. 843, 46 L. Ed. 2d 65, 96 S. Ct. 80; *People v. Hoggs* (1974), 17 Ill. App. 3d 67, 307 N.E.2d 800.

■■ Although the remarks of the prosecutor in closing argument in the instant case border on improper argument, we are of the opinion, after reviewing the record, that the evidence of defendant's guilt was sufficiently conclusive to warrant finding that those remarks were not prejudicial. It is evident that this case hinged on the credibility of the witnesses since the testimony of the complaining witness and the defendant was conflicting regarding the alleged rape and the possession of the checks. In that regard, the prosecutor's argument pertaining to the defendant's prior convictions and his credibility was proper insofar as it related to credibility. However, it is apparent that the prosecutor's remarks could be construed as indicating that the defendant's prior convictions revealed a criminal disposition to commit the crime charged in this case. We conclude, however, in view of the specific facts and evidence in this case, that the prosecutor's argument was not prejudicial such as to deprive the defendant of a fair trial. We might add, as a caveat, that had the evidence in this case been closer, we would have found that the prosecutor's remarks were improper and remanded for a new trial.

Defendant next contends that it was error for the prosecutor to inject his personal opinion in his argument. Defense counsel, in his closing argument, had argued that the State had failed to show that the handwriting on the checks cashed by the defendant was that of the complaining witness. The prosecutor's rebuttal was: "We don't send in handwriting samples for victims of crimes."

■■ It has been held that in responding to an opponent's arguments, an advocate is permitted considerable latitude. (*People v. White* (1977), 52 Ill. App. 3d 517, 367 N.E.2d 727.) Thus, the defendant cannot now complain since he provoked this line of argument. Consequently, we find no prejudice as a result of the prosecutor's comments.

The defendant next contends that he was not proved guilty of

robbery beyond a reasonable doubt since the evidence failed to show that the force involved in the rape was related to the taking of the purse. In order to sustain a conviction for robbery, it must be shown that the force or threat of force precedes or is contemporaneous with the taking of the property. (*People v. Heller* (1971), 131 Ill. App. 2d 799, 267 N.E.2d 685.) The difference between robbery and theft is that force or intimidation is involved in robbery while there is an absence of force or intimidation in theft. *People v. Tolentino* (1966), 68 Ill. App. 2d 480, 216 N.E.2d 191.

■■ In this case, the evidence revealed that the rape occurred in the bedroom and that the purse was taken from the kitchen. The testimony established that the distance between these two points was approximately 15 to 30 feet. Nowhere in the record is there any indication that the purse was taken from the presence of the victim with the use of force as required by the robbery statute. (Ill. Rev. Stat. 1977, ch. 38, par. 18—1.) Moreover, the record does not disclose that the force involved in the rape was related to the taking of the purse. In a similar case, the appellate court held that where the defendant entered a woman's home, choked her until he thought she was dead, and then took money from a purse lying on a nearby chair, no factual basis was established to support a charge of robbery. (*People v. Pack* (1976), 34 Ill. App. 3d 894, 341 N.E.2d 4.) It was noted in *Pack,* that the force used against the victim was with the intent to kill, not to steal. Accordingly, the court there held that the subsequent taking of the property, which apparently was an afterthought, established only theft.

■■ It has been noted that where the evidence is not sufficient to show a defendant used force in the taking of property, a defendant's robbery conviction may be reduced to a theft conviction. (*People v. Williams* (1976), 42 Ill. App. 3d 134, 355 N.E.2d 597.) We apply the rationale of *Pack* and *Williams* in the instant case since there was not a sufficient showing of force in the taking of the purse, as well as the fact that the force involved in the rape was not related to the theft of the purse. Since there was no testimony as to the amount of money in the purse or the value of the purse, we must assume that it was less than $150. Consequently, we reduce the defendant's conviction from robbery to theft under $150. We find that it is unnecessary to remand for resentencing on the theft conviction. The defendant has already served more than the maximum permissible sentence for theft under $150 (Ill. Rev. Stat. 1977, ch. 38, pars. 16—1(e)(1), 1005—8—3(a)(1)) on the concurrent sentences that were imposed in the instant case.

Since we are reducing the defendant's robbery conviction to a conviction for theft, it is unnecessary to discuss defendant's final argument regarding the trial court's failure to properly instruct the jury on the elements of robbery.

For the foregoing reasons, the defendant's convictions for rape and burglary are affirmed, and his conviction for robbery is reduced to a conviction for theft under $150. Accordingly, we modify the sentence previously imposed on the robbery conviction to a concurrent sentence of 364 days, the maximum permissible for a conviction of theft under $150.

Affirmed in part, reversed in part; sentence modified, and cause remanded for the issuance of an amended mittimus.

REARDON, P. J., and TRAPP, J., concur.