NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

# IN THE COURT OF APPEALS OF THE STATE OF ALASKA

JESSE CECIL BELARDE,

                Appellant,

        v.

STATE OF ALASKA,

                Appellee.

Court of Appeals No. A-11321
Trial Court No. 3AN-10-12993 CR

O P I N I O N

No. 2500 — May 20, 2016

Appeal from the Superior Court, Third Judicial District, Anchorage, Michael L. Wolverton, Judge.

Appearances: Whitney G. Glover, Assistant Public Advocate, Appeals and Statewide Defense Section, and Richard Allen, Public Advocate, Anchorage, for the Appellant. Ann B. Black, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Craig W. Richards, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Coats, Senior Judge.[*]

Judge MANNHEIMER.

---

[*] Sitting by assignment made pursuant to Article IV, Section 11 of the Alaska Constitution and Administrative Rule 23(a).

Jesse Cecil Belarde and two friends, Rolando Barlow and Robert Smith, entered an Anchorage Fred Meyer store for the purpose of stealing a battery for Belarde's car.

(Belarde's car had recently broken down, and it was inoperable unless the battery was recharged. After concluding that it would take too long to recharge the battery, Belarde borrowed another car, and he and his friends went looking for a battery to steal.)

Inside the Fred Meyer store, Belarde went to the car battery section and identified the correct battery for his vehicle. His friend Smith then picked up the battery and attempted to carry it out of the store (without paying).

Two of the store's loss-prevention employees intercepted Smith in the arctic entry. Smith dropped the battery and punched one of the employees in the face. Belarde's other friend, Barlow, then hit the other loss-prevention employee in the face. At this point, Smith pulled a pistol from his waistband, chambered a round, and ordered the loss-prevention employee to back away. Belarde then picked up the battery from the floor, and he and his friends left the store (with the battery).

Based on this incident, Belarde was convicted of both the theft of the battery and first-degree robbery. The robbery charge was based on the theory that Belarde and his accomplices took the battery from the immediate presence of the store employees through the use of force (the basic crime of second-degree robbery as defined in AS 11.41.510(a)), and by threatening the employees with a pistol (thus elevating the crime to first-degree robbery as defined in AS 11.41.500(a)).

In this appeal, Belarde argues that his first-degree robbery conviction must be reversed because his jury was misinstructed regarding the rules for when one accomplice to a crime (in this case, Belarde) can be held legally accountable for the intentions of another accomplice to the crime (in this case, Smith).

We agree with Belarde that there was a flaw in the jury instruction on the elements of first-degree robbery. But we conclude that, given the facts of Belarde's case and the way in which the case was argued to the jury, there is no chance that the flaw in the jury instruction affected the jury's verdict. We therefore affirm Belarde's robbery conviction.

*A more detailed look at Belarde's claim on appeal*

Belarde acknowledges that he was properly found guilty of stealing the car battery. (In fact, when Belarde's trial attorney delivered his summation to the jury, he conceded that Belarde should be convicted of theft.) But Belarde argues that his robbery conviction should be reversed because of a faulty clause in the jury instruction on the elements of first-degree robbery.

Belarde's attack on the jury instruction is based on the defense that he offered at trial. Belarde testified that, when he picked up the battery and ran out of the store, he was unaware that Smith had used a pistol to threaten the employees.

(Belarde asserted that he had been using his mobile phone as he walked out of the store, and thus his attention was initially distracted away from the fight that occurred between Smith, Barlow, and the two loss-prevention employees. Belarde declared that he remained unaware that Smith had used the pistol until they were driving away from the store, when he listened to Smith and Barlow recounting the events that had just occurred.)

Turning to the jury instruction on the elements of first-degree robbery, paragraph 3 of this instruction told the jurors that the State was required to prove that "[Belarde] *or another participant* intended to prevent or overcome ... resistance to the taking of the property [by using force]". (Emphasis added) Pointing to this italicized

language, Belarde argues that this jury instruction improperly deprived him of his defense to the first-degree robbery charge — because this instruction told the jurors that, as long as *Smith* intended to accomplish the taking by armed force (*i.e.*, by threatening the store employees with a pistol), it did not matter whether *Belarde personally* intended to accomplish the taking by force.

Belarde's trial attorney did not object to the jury instruction, so Belarde must now show that the challenged jury instruction constituted plain error.

*Even if the challenged jury instruction was flawed, we conclude that any error was harmless, given the way this case was litigated and argued to the jury*

Under the definition of robbery codified in AS 11.41.510(a), the theft or attempted theft of property from the immediate presence and control of another constitutes robbery if, during the course of the taking (or attempted taking), the defendant

> uses [force] or threatens the immediate use of force upon any
> person with [the] intent to ... prevent or overcome resistance
> to the taking of the property or the retention of the property
> after [the] taking.

On appeal, Belarde implicitly concedes that if Smith threatened the Fred Meyer employees with a pistol to overcome their resistance to the theft of the car battery, this would constitute a robbery — and would, in fact, constitute a first-degree robbery under AS 11.41.500(a)(1), which covers all cases of robbery where the defendant "is armed with a deadly weapon or represents by words or other conduct that [the defendant] or another participant [in the taking] is so armed".

Belarde's claim of plain error rests on the premise that even if Smith and Barlow committed robbery by striking the Fred Meyer loss-prevention employees, and even if that robbery became a first-degree robbery when Smith drew the pistol, Belarde himself would be innocent of robbery if he did not personally intend for the theft to be accomplished by force. Based on this premise, Belarde argues that it was obvious error for the trial judge to instruct the jurors that it was sufficient for the State to prove that *either* Belarde *or* Smith *or* Barlow used force with the intent of preventing or overcoming resistance to the taking of the battery.

*The "natural and probable consequences" theory of accomplice liability*

Belarde's argument ignores the criminal law doctrine that a person who participates in a joint criminal enterprise (such as the theft in this case) is deemed to intend the natural and probable consequences of that enterprise — including any reasonably foreseeable related criminal offenses committed by the person's accomplices. *United States v. Barnett*, 667 F.2d 835, 841 (9th Cir. 1982); *People v. Durham*, 449 P.2d 198, 204; 74 Cal.Rptr. 262, 269 (Cal. 1969). *See also Vaden v. State*, 768 P.2d 1102, 1111 (Alaska 1989) (Justice Burke, dissenting).

As the California Supreme Court explained in *People v. Prettyman*, 926 P.2d 1013, 1019-1020; 58 Cal.Rptr.2d 827, 833-34 (Cal. 1996):

> At common law, a person encouraging or facilitating the commission of a crime could be held criminally liable not only for that crime, but for any other offense that was a "natural and probable consequence" of the crime aided and abetted.

Although legal commentators have questioned whether it is proper to hold accomplices liable for all reasonably foreseeable crimes committed in pursuance of a criminal enterprise,[1] most courts adhere to the "natural and probable consequences" doctrine. *See* Wayne R. LaFave, *Substantive Criminal Law* (2nd ed. 2003), § 13.3(b), Vol. 2, pp. 360-63 (criticizing the doctrine but describing it as the "established rule"). And under this doctrine, if the jury concluded that it was reasonably foreseeable that Smith would threaten the loss-prevention officer with a firearm, then Belarde could properly be found guilty of first-degree robbery.

There is no Alaska case expressly adopting the "natural and probable consequences" doctrine of accomplice liability. And, in any event, it is a jury question whether an accomplice's crime was "reasonably foreseeable" under the facts of a given case — and Belarde's jury was not asked to resolve this question.

The foregoing discussion of the "natural and probable consequences" doctrine is relevant only because Belarde's attack on the jury instruction is raised as a claim of plain error. That is, Belarde must show that it was obvious error for the trial judge to instruct the jurors that Belarde could be convicted of robbery if *any* participant in the theft (Belarde or Smith or Barlow) used force or threatened the use of force to prevent or overcome resistance to the theft of the battery. The "natural and probable consequences" doctrine is the predominant rule in American jurisdictions; and under this doctrine, the challenged jury instruction was not obvious error — indeed, it was not error at all — so long as the jurors found that Belarde's accomplice's use of force was reasonably foreseeable.

But to resolve Belarde's case, we need not decide whether to adopt the "natural and probable consequences" doctrine of accomplice liability — because there

---

[1] *See* Joshua Dressler, *Understanding Criminal Law* (1987) § 30.05, p. 427.

is a second, more case-specific reason why we conclude that the challenged jury instruction was not plain error.

*Why we conclude that any flaw in the jury instruction was cured by the final arguments of the parties*

As we explained earlier, Belarde's theory of defense was that (1) he was unaware that Smith had threatened the Fred Meyer loss-prevention employees with a pistol, and that (2) even if Smith did threaten the Fred Meyer employees with the pistol, Belarde himself never intended to accomplish the theft of the battery through the use of force.

In response to this offered defense, the prosecutor told the jurors that the State was required to prove (1) that Belarde was, indeed, personally aware that Smith had drawn a gun on the Fred Meyer employees, and (2) that Belarde knowingly took advantage of this situation to grab the battery, knowing that the Fred Meyer employees had been intimidated and were no longer actively attempting to stop the theft.

The prosecutor reminded the jurors of the testimony given by Belarde's accomplice, Barlow, and the testimony given by the detective who interviewed Belarde following his arrest. Between them, these two witnesses testified that Belarde *did* see Smith take out the gun, and saw one of the Fred Meyer employees with his hands up. At that point, according to Barlow's testimony, Belarde said, "Fuck that. I'm not leaving [the battery] here." — and he picked up the battery.

The prosecutor argued that Belarde, despite his protests of ignorance, must have seen what was going on — and that Belarde, at that instant, formed the intent to take advantage of Smith's use of force by completing his theft of the battery, knowing that the Fred Meyer employees had been threatened into ceasing their resistance to the theft:

*Prosecutor*:  [The crime of] robbery ... requires [an] assault — [a] threat, [a] show of force — and it requires [a] taking.  You need both.  In this case, Rolando Barlow and Robert Smith were the use of force, ... and Jesse Belarde completed the taking.  And, together, that created the robbery.

It's pretty convenient for Mr. Belarde at this point to say, ... "I don't remember seeing the gun; I don't remember looking around."  [But] I encourage you to go back and watch the video.  ...  Mr. Belarde is in there, he's moving around.  He's watching what's going on, and he's actively involved.  He comes towards Jonathan Canaii [one of the store's loss-prevention officers] with his hand out.  You can see him do that.  [Belarde says that] he doesn't remember.  [But] he is an active and willing participant in this robbery.

. . .

Jesse Belarde tells loss-prevention officer Canaii to let [Robert] Smith go.  Let him go.  And you can see in that video when [Belarde] comes forward with something in his hand, probably a cell phone.  He comes forward.  Ladies and gentlemen, he's in this; he's a part of this.  He picks up the battery after the gun comes out.  ...  And they [all] run out of the store.  He's the get-away driver.

Ladies and gentlemen, you heard today that Mr. Belarde and Mr. Barlow were standing right next to each other while the loss-prevention officers were dealing with Mr. Smith.  There's no way that [Belarde] couldn't have seen what was going on.  And I encourage you to go listen ... again [to] the interview with Detective Summey, and hear what Mr. Belarde said actually happened.

. . .

[Under a complicity theory, a] defendant need not commit every element of the offense in order to be guilty as

an accomplice. However, it's necessary [that] he participate. In other words, it's something that he wishes to bring about, [something] that the person seeks by his actions to make succeed. ... Jesse Belarde is ... absolutely guilty as an accomplice. His actions helped promote, facilitate, plan, [and] develop [the] execution of this robbery. Ladies and gentlemen, he was in there; he was involved. He got the car, he picked up the battery at the end [after] he picked out the battery itself. If it weren't for Mr. Belarde, there wouldn't have been a robbery that day.

In response to the prosecutor's argument, Belarde's attorney delivered a summation in which he conceded that Belarde planned and executed a theft, but in which he asserted that Belarde was not guilty of robbery.

More specifically, the defense attorney argued that Belarde never intended to use force to accomplish the theft of the battery — and that even if Belarde had seen Robert Smith using force against the loss-prevention officers, that use of force was simply so that Smith and the others could escape. The defense attorney argued that Belarde was not responsible for Smith's use of force to avoid arrest, and the defense attorney argued that Belarde's contemporaneous act of picking up the battery and running out of the store did not prove that Belarde ever intended to accomplish the taking by force.

Here is the final paragraph of the defense attorney's summation:

*Defense Attorney*: The crucial thing is the intent. And Mr. Belarde never intended to rob anybody. [And] Mr. Smith never intended to rob anybody. Mr. Smith's intent was to ... escape, and Mr. Belarde's intent was to steal the battery. So I ask you to find my client not guilty of robbery. Thank you.

In his rebuttal summation, the prosecutor agreed that the crucial issue was Belarde's intent — but the prosecutor argued that, even though Belarde may not have

intended to steal the battery by force when he walked into the Fred Meyer store, Belarde formed the intent to accomplish the taking by force when he saw Smith holding the loss-prevention officers at bay with a gun:

> *Prosecutor*: Ladies and gentlemen, people are not required to premeditate or plan their intent. Intent can be formed in an instant. ... [T]hat's what happened in this case. After the gun is out, after [loss-prevention officer] Fred Becker is standing there with his hands up — we know [that] Robert Smith intended to still take the battery by force, because, as he's holding Fred Becker at bay, he starts to move towards the battery. ...

> [Robert Smith] wasn't trying to just get out of there; he was trying to get out there with the battery. He was trying to complete that robbery. And as [Robert Smith is] standing there with a gun pointed at Fred Becker, it's Jesse Belarde who sees [Smith's] use of force ... . He sees that, and he's using that force when he picks up the battery and runs out of the store.

> Ladies and gentlemen, the intent was formed at the moment he bent over, after seeing the gun, and picks up the battery and runs out. This is a theft that went wrong. It was a theft that turned into a robbery.

In other words, the prosecutor did not argue that Belarde was guilty of robbery because *someone else* (Robert Smith) intended to use force to accomplish the taking. Rather, the prosecutor argued that Belarde was guilty of robbery because *Belarde personally* formed the intent to accomplish the taking by force — *i.e.*, the intent to complete the theft of the battery by taking advantage of the fact that Smith was intimidating the store employees with a gun.

According to Wayne R. LaFave, *Substantive Criminal Law* (2nd ed. 2003), § 20.3(e), Vol. 3, pp. 191-92, "[t]he great weight of authority" favors the view that a robbery occurs when one person strikes another, even without an intent to steal, "and ... then, seeing his adversary helpless, takes the latter's property from his person or his presence." Indeed, many appellate courts have held that, in such circumstances, a robbery is committed even if the taking of property occurs *after* the use of force has stopped. A number of these cases are discussed in *Stebbing v. State*, 473 A.2d 903, 914-15 (Md. 1984). [2]

---

[2]   In *Rex v. Hawkins*, 3 Carr. & P. 392 (1828), a gamekeeper came upon a group of poachers. The poachers beat the gamekeeper until he was unconscious, left him lying on the ground and fled. After the poachers had gone some little distance, one of them, Williams, returned and took the gamekeeper's money and gun. The court held that the poachers, other than Williams, were not guilty of robbery, but that Williams had committed robbery.

To the same general effect are: *People v. McGrath*, 62 Cal.App.3d 82, 133 Cal.Rptr. 27 (1976) (after the victim was murdered in retribution for a homosexual attack on a third party, the defendant removed money from victim's pockets); *People v. Jordan*, 303 Ill. 316, 135 N.E. 729 (1922) (after the victim was knocked out in a street fight; the victim's money was taken); *State v. Covington*, 169 La. 939, 126 So. 431 (1930) (the victim was beaten until he appeared to be dead, then his money was taken); *Hope v. People*, 83 N.Y. 418 (1881) (the victim was forced to reveal the combination to safe located on bank premises, then the key to the bank taken from the victim's bedroom when the defendants were leaving); *Turner v. State*, 198 S.W.2d 890 (Tex. Crim. 1947) (the victim was knocked unconscious in an altercation arising out of a minor traffic accident; then the victim's money was taken); *Alaniz v. State*, 177 S.W.2d 965 (Tex. Crim. 1944) (the victim was beaten to avenge an insult, then his money taken: "[Although] there must be an intent to steal at the time of the taking ... , the intent to steal need not coincide with the force. It is sufficient if there be force followed by a taking with intent to steal as part of the same general occurrence or episode."). *Accord*: *Norman v. Sheriff of Clark County*, 558 P.2d 541, 542-43 (Nev. 1976); *State v. Iaukea*, 537 P.2d 724 (Haw. 1975).

(continued...)

– 11 –                                                                    2500

In Belarde's case, the State's theory of robbery was more straightforward — because, under the State's view, Belarde took the battery *while* Smith was using force against the store employees. But regardless of whether Belarde picked up the battery while Smith was intimidating the employees with a gun or immediately thereafter, the majority view supports the prosecutor's argument that Belarde committed a robbery when he formed the intent to take advantage of the opportunity created by his accomplice's use of force, by taking the car battery from the immediate presence of the now-subdued store employees.

To sum up this discussion: The prosecutor told the jurors that Belarde could be convicted of robbery only if the State proved that Belarde (1) knew that Smith had intimidated the store employees with a gun, and that Belarde (2) purposely took advantage of this opportunity to accomplish the taking of the car battery. As a legal matter, the prosecutor's argument was not plainly erroneous; in fact, it represents the majority view in this country. Accordingly, we find that any arguable ambiguity or flaw in the challenged jury instruction was cured by the defense attorney's summation and the prosecutor's response. [3]

For these reasons, we conclude that Belarde has failed to show that the challenged portion of the jury instruction constituted plain error.

---

[2] (...continued)

*But see People v. King*, 384 N.E.2d 1013 (Ill. App. 1979); *State v. Lopez*, 900 A.2d 779, 783-86 (N.J. 2006); *Branch v. Commonwealth*, 300 S.E.2d 758 (Va. 1983) (adopting the minority position that this situation does not support a conviction for robbery, but rather separate convictions for assault and theft).

[3] *See Riley v. State*, 60 P.3d 204, 208 (Alaska App. 2002) ("we have repeatedly held that ambiguities and potential flaws in jury instructions can be cured by the arguments of the parties"); *Norris v. State*, 857 P.2d 349, 355 (Alaska App. 1993); *O'Brannon v. State*, 812 P.2d 222, 229 (Alaska App. 1991).

(We also reject Belarde's related argument that the prosecutor exacerbated the flaw in the jury instruction by arguing that Belarde did not need to know that he was committing a robbery. We have examined the challenged portion of the prosecutor's argument, and it is clear that she was merely telling the jury that it did not matter whether Belarde understood that, as a legal matter, his conduct and his accompanying culpable mental state constituted the offense of robbery as defined under Alaska law.)

*Conclusion*

The judgement of the superior court is AFFIRMED.