THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
EDDIE WILLIAMS, Defendant-Appellant.

First District (3rd Division)   No. 62480

Opinion filed September 7, 1976.

James J. Doherty, Public Defender, of Chicago (James Reddy, Robert K. Cole, and Richard D. Kharas, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Eugene J. Rudnik, Jr., and Robert Handelsman, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

The defendant, Eddie Williams, was charged with the offense of attempt robbery. (Ill. Rev. Stat. 1973, ch. 38, pars. 8—4(a), 18—1(a).) He was found guilty in a nonjury trial and was sentenced to a term of two to six years in the penitentiary. He contends that he was not proven guilty beyond a reasonable doubt and that in any event a conviction for attempt robbery was improper because there was no evidence that the robber used force or threatened the imminent use of force.

Caroline Bell testified that on January 16, 1974, at 5 p.m., the defendant entered the Flair Cleaners, where she worked. He was wearing a brown jacket, plaid pants and a black hat with a feather. When Bell approached the counter to wait on him, he handed her a brown paper bag and said, "Put the money in." When asked what money he was referring to, he replied: "The money in the cash register." She began filling the bag with money and he told her to hurry up. Rogeen Johnson, a co-worker, overheard this instruction and came over to the counter to find out what was taking place. When informed by Bell, Johnson ordered her to stop putting money into the bag. Johnson called the police and at this point Williams walked out of the cleaners.

The 5 p.m. encounter was the third time that Bell had seen the defendant. The first time was on January 15 when he brought some clothes in to be cleaned. She gave him a receipt and made a record that his name was Williams and that he lived at 3972 South Lake Park. The second time was at 2 p.m. on January 16, when he returned to the cleaners and asked for his clothes. Rogeen Johnson waited on him and told him that his clothes were not ready and to return later.

Rogeen Johnson identified the defendant and corroborated Caroline Bell's testimony concerning the attempt robbery. She testified that at the

time of the robbery Williams had both hands in the pockets of his brown leather coat and that it appeared that his right hand was balled up into a fist.

The police arrived at the Flair Cleaners at approximately 5:15 p.m. Bell gave them the name and address on Williams' cleaning record and a description of the clothes he was wearing. Johnson told the police that the robber was 6 feet tall, weighed 160 pounds and was in his 20's.

The police officers went to the apartment building at 3972 South Lake Park and searched for men that fit the women's description. After being unsuccessful in their search on the lower two floors, the officers knocked on a third-floor apartment door. The defendant's mother answered and the officers told her that there had been some trouble down at Flair Cleaners. Within a few moments his two brothers, Lonnie and Melvin Williams, appeared. The police told them that the Flair Cleaners had been robbed and asked if they would accompany them there. Both agreed to the request. The officers did not see the defendant at this time.

Upon their arrival at Flair, Bell stated that she did not recognize the two men; she told the officers that the robber was taller—between 5 feet, 9 inches and 6 feet—that he had a little mustache and "medium colored skin." Johnson told the officers that neither individual was the robber.

The officers returned to the apartment building on Lake Park. As they entered the building, the officers met the defendant who said that he was leaving for work. Williams was wearing a grey suit and white shirt. The officers requested that he accompany them to the Flair Cleaners and he agreed to go. At the cleaners both women immediately identified him as the robber.

Williams, who testified that he was 29 years old, denied being in the Flair Cleaners on either January 16 or 15. His defense was twofold: first, that he did not wear clothing of the kind described by the Flair employees and, second, an alibi. Williams, whose arrest report stated that he was 6'1" tall and weighed 200 pounds, had been recently released from the penitentiary. He claimed that the only clothing he had was a grey suit which had been given him upon his release. A parole agent testified that he attempted to get Williams some work clothes because he had nothing to wear except the suit that the prison had given him. His mother and a brother testified that he was at home at the time the robbery was attempted. Both stated that he was wearing the clothes he had received at the penitentiary. Additionally, there was testimony that he had injured his right hand as a child, that he was left-handed, and that the police saw him when they came to the door on January 16, but said he was too old, that they were looking for someone between 17 and 20 years of age. His brother, Melvin, testified that it was he who took the clothing to the

cleaners on January 15 and his brother, Tyrone, testified that Melvin gave him the receipt and that it was in his possession on the 16.

In support of his contention that he was not proven guilty beyond a reasonable doubt, the defendant calls attention to the fact that the occurrence witnesses' descriptions of the robber's clothes did not match the grey suit he was wearing when arrested; that he is left-handed, but Caroline Bell testified that the robber handed her the paper bag with his right hand; that he is older, taller and heavier than the description of the robber given by Rogeen Johnson; that the police first took his two younger brothers, who were shorter than he, to the cleaners as suspects before they took him, and that evidence of the cleaning receipt was never produced by the State at the trial. Williams argues that these circumstances substantiate the defense claim that the police said he did not fit the description of the robber because he was too old and too tall, and that consequently Johnson and Bell must have given the police officers a description that differed from that of the defendant and that their testimony was therefore discredited.

■■ The presentation of an alibi defense does not obligate the trier of fact to disregard the State's contrary evidence. (See *People v. Stock* (1973), 15 Ill. App. 3d 722, 304 N.E.2d 646.) Alibi testimony does not have to be believed over positive identification of an accused, even though the alibi was attested to by a greater number of witnesses. (*People v. Jackson* (1973), 54 Ill. 2d 143, 295 N.E.2d 462.) Bell and Johnson without hesitation identified Williams as the robber. The accuracy of their identifications is substantiated by the fact that Bell saw Williams on two prior occasions and Johnson waited on him just three hours before the attempted robbery. Although there were some discrepancies between their descriptions of the robber and Williams' actual physical dimensions, these differences were minor. The variance between their descriptions of the clothes worn by the robber and the clothes worn by Williams when they next saw him is of no significance. He had ample opportunity to change his apparel during this interval. That his apparel was different makes it clear that the witnesses' identifications were not influenced by his clothing.

There is no evidentiary support for the argument that Williams' right hand was totally incapacitated. As far as the record shows he was physically capable of handing the paper bag to the Flair employee with his right hand.

■■ Williams further argues that his "willingness to accompany the police officers is cogent evidence of his innocence." He theorizes that his failure to flee should be construed as consciousness of innocence since flight has long been held to be evidence of consciousness of guilt. It is not

unreasonable to assume that the trier of fact concluded that the defendant willingly accompanied the police officers because he decided that resistance would have been futile..

We affirm the trial court's finding that the defendant was proven guilty beyond a reasonable doubt.

To sustain a conviction for the offense of attempt robbery, the evidence must show a substantial step toward the taking of property from the person or presence of another by the use of force or the threat of imminent use of force and an intent toward that end. (*People v. Steptoe* (1976), 35 Ill. App. 3d 1075, 343 N.E.2d 1.) The use of force or the threat of the imminent use of force is an essential element in the crimes of robbery and attempt robbery. It is the element that differentiates robbery from theft. (*People v. Ashford* (1974), 17 Ill. App. 3d 592, 308 N.E.2d 271.) There is no evidence that Williams used force when he attempted to obtain money from the Flair employees. The only question, therefore, is whether he threatened the imminent use of force.

■■ Williams said nothing after he told Caroline Bell to put the money into a paper bag. So there were no verbal threats. Rogeen Johnson testified that he had both of his hands in the pockets of his leather coat and that one of them appeared to be in the form of a fist. We do not think that this was enough to warrant the inference that he had a gun in his pocket. It would have been different if there had been evidence that he made a menacing gesture with his hand, but this was not the case. We must conclude that Williams did nothing by word or action to indicate that he would use force if the employees did not comply with his demand for money.

■■ Where there is no evidence of force to support a criminal charge of robbery, or where it is doubtful whether the accused is guilty of robbery or larceny, he may be found guilty of theft. (*People v. Williams* (1961), 23 Ill. 2d 295, 178 N.E.2d 372; *People v. Tolentino* (1966), 68 Ill. App. 2d 480, 216 N.E.2d 191.) A person commits theft when he knowingly obtains or exerts unauthorized control over the property of the owner. (Ill. Rev. Stat. 1973, ch. 38, par. 16—1(a).) The indictment alleged that Williams attempted to take money from the person and presence of Caroline Bell, and the State suggests that if it is necessary to change his offense it should be to attempt theft from the person. The difficulty with this is that the evidence does not support this charge. Williams did not attempt to take money from Bell's person but did attempt to take it from the cash register which was in her presence.

■■ Accordingly, we reduce Williams' conviction from attempt robbery to attempt theft. Since there was no testimony as to the amount of money in the register, we must assume that it was less than $150. Theft of property not from the person and not exceeding $150 in value is a Class A misdemeanor. (Ill. Rev. Stat. 1973, ch. 38, par. 16—1(e)(1).) We

therefore find him guilty of an attempt to steal a sum less than $150 and sentence him to 364 days' imprisonment—the maximum term for this offense. Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—3(a)(1).

The judgment is affirmed as modified.

Judgment of conviction affirmed; sentence modified.

McNAMARA and McGLOON, JJ., concur.