THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
BOBBY JOE JACKSON, Defendant-Appellant.

Fifth District No. 5—86—0156

Opinion filed July 29, 1987.—Rehearing denied August 26, 1987.

Daniel M. Kirwan and Dan W. Evers, both of State Appellate Defender's Office, of Mt. Vernon, and Nancy Abell, law student, for appellant.

Dennis Middendorff, State's Attorney, of Carlyle (Kenneth R. Boyle, Stephen E. Norris, and Wendy B. Porter, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LEWIS* delivered the opinion of the court:

The defendant, Bobby Joe Jackson, was charged with the offense of robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—1) and, later, with the offense of theft from the person (Ill. Rev. Stat. 1985, ch. 38, par. 16—1). The trial court granted the defendant's motion for a directed ver-

---

*Justice Lewis replaces Justice Jones, who retired after the cause was taken under advisement.

dict with regard to the charge of robbery but denied the motion with respect to the charge of theft from the person and a jury found him guilty of the latter offense. Because of the defendant's prior criminal record the trial court sentenced him to the Department of Corrections for a term of five years. The defendant presents two issues for our review: (1) whether his conviction of theft from the person must be reversed "because no property was taken from the victim's person but only from the victim's automobile" and (2) whether the cause should be remanded for a hearing on the defendant's *pro se* post-trial motion for a new trial in which he indicated, *inter alia*, that he had been denied the effective assistance of counsel.

Section 16—1 of the Criminal Code of 1961 provides in pertinent part:

"A person commits theft when he knowingly:

(a) Obtains or exerts unauthorized control over property of the owner ***

(d) *** and

(1) Intends to deprive the owner permanently of the use or benefit of the property ***." (Ill. Rev. Stat. 1985, ch. 38, par. 16—1.)

Subsection (e)(3) of section 16—1 provides with regard to sentence that "[t]heft of property from the person or exceeding $300 is a Class 3 felony." Subsection (e)(1) of section 16—1 provides with regard to sentence that "[t]heft of property, other than a firearm, not from the person and not exceeding $300 in value is a Class A misdemeanor." (Ill. Rev. Stat. 1985, ch. 38, pars. 16—1(e), (1), (3).) The defendant asks us to reverse his conviction for the offense of theft from the person and remand the cause for resentencing as a Class A misdemeanor.

At trial the victim, Neil Bruce Balding, testified for the State that on September 30, 1985, at about 7:30 p.m., he had stopped at the Posey rest stop. The victim stated that as he was returning to his car, the defendant approached him with the words, "I was talking to you." Repeating the statement, the defendant "pushed" the victim against the victim's car and asked him if he had his billfold. When the victim responded that he "didn't have one," the defendant "reached behind and seen [sic] if I had one in my pocket and I didn't." Then the defendant opened the door on the driver's side of the car, felt underneath the driver's seat, and removed the victim's wallet, from which he removed about $190, a Visa card, and a Mastercard. From the backseat the defendant took a radio-cassette player. While the defendant was getting the billfold from the car, the victim said, a sec-

ond man approached the car and received the keys from the defendant, who had removed them from the ignition. The second man opened the trunk and emptied its contents. The defendant testified that on the date in question he was at Patty's Pub in Collinsville drinking beer from 10 a.m. until 8 or 9 p.m. and was not at the site of the offense.

The defendant contends that the State failed to prove him guilty beyond a reasonable doubt of the offense of theft from the person because the facts clearly indicate that the victim did not have any property taken from his person. The State maintains that the defendant was proved guilty of theft from the person because the words "from the person" in the theft statute include the taking of property not only from the actual person of the victim but also from the presence of the victim where the property taken was under the care, control, or protection of the victim.

The parties agree that there are no Illinois cases that address the precise issue presented, whether one may lawfully be convicted of the offense of theft from the person when the property taken was in the presence of the victim but not on his or her person. Of the jurisdictions that have considered the issue, some have taken the position that the property when taken must have been on the person of the victim (*Wilder v. State* (1941), 30 Ala. App. 107, 1 So. 2d 317; *People v. McElroy* (1897), 116 Cal. 583, 48 P. 718; *State v. Crowe* (1977), 174 Conn. 129, 384 A.2d 340; *Terral v. State* (1968), 84 Nev. 412, 442 P.2d 465; *State v. Lucero* (1972), 28 Utah 2d 61, 498 P.2d 350), whereas others have taken the view that the property when taken need be merely within the immediate presence of the victim and not necessarily upon his or her person (*Banks v. State* (1946), 74 Ga. App. 449, 40 S.E.2d 103; *State v. Kobylasz* (1951), 242 Iowa 1161, 47 N.W.2d 167; *Commonwealth v. Subilosky* (1967), 352 Mass. 153, 224 N.E.2d 197; *State v. Jones* (Mo. Ct. App. 1973), 499 S.W.2d 236; *State v. Blow* (1975), 132 N.J. Super. 487, 334 A.2d 341).

As the court observed in *People v. McElroy*, which, as we said, required that the property when taken be on the person of the victim,

"[t]he stealing of property from the person has been from an early period, under the English statutes, treated as a much graver and more heinous offense than ordinary or common theft—partly by reason of the ease with which it could be perpetrated, and the difficulty of guarding against it, and partly because of the greater liability of endangering the person or life of the victim. The same general reason and purpose animate the modern statutes, including our own, and, as in En-

gland, the offense is made punishable as a felony. The difficulty has been in defining with precision in all cases what constitutes a taking from the person, and this has given rise to some confusion in the authorities on the question as to whether the property must be actually on, or attached to, the person, or merely under the eye, or within the immediate reach, and so constructively within the control, of the owner." (*People v. McElroy* (1897), 116 Cal. 583, 584-85, 48 P. 718, 718.)
The court in *Terral v. State*, which likewise held that one may not lawfully be convicted of the crime of larceny from the person when the property taken was near the victim but not on his person, noted that the gravamen of the offense of larceny from the person is "that the person of another has been violated and his privacy directly invaded" (*Terral v. State* (1968), 84 Nev. 412, 414, 442 P.2d 465, 466). In *State v. Blow*, in which the defendant contended that the trial judge improperly charged larceny from the person because the $160 he admitted stealing was taken not from the victim's person but from beneath the car seat upon which the victim was sitting, the court concluded that larceny from the person includes the theft of money, goods, or chattels that are within the immediate custody and control of the victim, noting that the danger of confrontation between thief and victim had been present and that the victim's person and privacy had been invaded. So too in the instant case was the danger of confrontation as great as it would have been had the victim's wallet been in a pocket of his clothing rather than beneath the front seat of his car. Nor was the victim's privacy any less invaded because the items when taken were in his presence rather than on his person. Certainly in the attempt to locate the victim's wallet his person was violated.

We find particularly instructive and persuasive the analogy of the robbery statute (Ill. Rev. Stat. 1985, ch. 38, par. 18—1) with the statute pertaining to theft from the person. The use of force or the threat of the imminent use of force is an essential element in the crime of robbery and is the element that differentiates robbery from theft. (*People v. Williams* (1976), 42 Ill. App. 3d 134, 355 N.E.2d 597.) Where an article is taken without any sensible or material violence to the person, the offense will be held to be theft from the person rather than robbery. (*People v. Patton* (1979), 76 Ill. 2d 45, 389 N.E.2d 1174.) The robbery statute, in section 18—1(a), provides that "[a] person commits robbery when he takes property from the person or presence of another by the use of force or by threatening the imminent use of force." (Ill. Rev. Stat. 1985, ch. 38, par. 18—1(a).) The committee comments to that section state that the words "or presence" were

added to incorporate the holding of the court in *People v. Braverman* (1930), 340 Ill. 525, 173 N.E. 55. (Ill. Ann. Stat., ch. 38, par. 18—1, Committee Comments, at 86 (Smith-Hurd 1987 Supp.).) The court held in *Braverman* that property stolen in a robbery need not be in actual contact with the person of the one from whom it was taken:

> "Robbery, as defined by the statute, is the felonious and violent taking of money, goods or other valuable thing, from the person of another by force or intimidation. The indictment was in the language of the statute, and it is argued that to constitute robbery the taking of the money must have been from the person of Glickman [the manager of the store in which the robbery occurred who was forced to open the safe]. The words 'taking from the person of another,' as used in the common law definition of robbery, were not restricted in their application to those cases in which the property stolen was in actual contact with the person of the one from whom it was taken, but included within their meaning the taking, by force or intimidation from the presence of the person assaulted, of property which either belonged to him or was under his personal control and protection. (1 Hale's P.C. 532; *O'Donnell v. People*, 224 Ill. 218.) Nor was it necessary that the property should be in the actual or immediate presence of the owner or custodian. The requirement was that the property should be in the possession or under the control of the individual robbed in such a way or to such an extent that violence or putting in fear was the means used by the robber to take it. Where the words 'taking from the person of another' have been incorporated into a statute defining robbery, they have received the same construction as at common law. (*O'Donnell v. People, supra*; 23 R.C.L. 1142.) The evidence showed that the property was violently taken by force and intimidation from the presence, as well as the control, of the custodian Glickman, and hence proof of the crime of robbery under the statute was complete." 340 Ill. 525, 530-31, 173 N.E. 55, 57.

The defendant relies in part upon *People v. Williams*. There the defendant was charged with and found guilty of the offense of attempted robbery. On appeal he contended that he was not proven guilty beyond a reasonable doubt and that in any event a conviction for attempted robbery was improper because there was no evidence that the robber used force or threatened the imminent use of force. In *Williams* the defendant had entered a dry cleaning establishment, had handed the clerk a brown paper bag, and had told the clerk to

put "the money" (*People v. Williams* (1976), 42 Ill. App. 3d 134, 135, 355 N.E.2d 597, 599) in it. On inquiry he stated that he meant the money in the cash register. She was following his instructions when a co-worker interrupted her and called the police, at which time the defendant walked away. The court of review concluded that the defendant had done nothing by word or action to indicate that he would use force if the employees did not comply with his demand for money. In *Williams* the State had suggested that if it were necessary to change the offense from attempted robbery to attempted theft, the charge should be attempted theft from the person. The court of review responded, "The difficulty with this is that the evidence does not support this charge. Williams did not attempt to take money from Bell's [the clerk's] person but did attempt to take it from the cash register which was in her presence" (42 Ill. App. 3d 134, 138, 355 N.E.2d 597, 601). The court accordingly reduced the defendant's conviction from attempted robbery to attempted theft punishable as a misdemeanor. We disagree with *Williams* to the extent that *Williams* indicates that theft from the person requires a taking of property from the actual person of the victim and not merely from his or her presence.

■ For the reasons we have expressed we think the better view is that the words "from the person" in section 16—1 include the taking of property not only from the actual person of the victim but also from the presence of the victim. We accordingly affirm the judgment of the trial court concerning this issue.

■ We turn to the other issue the defendant raises, whether the cause should be remanded for a hearing on his *pro se* post-trial motion for a new trial. Following the trial defense counsel filed motions for a new trial and for judgment notwithstanding the verdict. At the hearing on the post-trial motions and for sentencing conducted on February 28, 1986, the following colloquy between court, defense counsel, and defendant occurred:

"MR. HENRY BERGMANN [Defense Counsel]: Your Honor, I filed a Motion for New Trial, which I don't know if the Court wants to hear arguments on it. I simply raised—

THE COURT: I have read the motion and I thought it was basically the same as you raised at trial.

MR. BOBBY JOE JACKSON: I also have a pro se motion I would like to file in this.

THE COURT: You can file it. As long as you have an attorney, if he files it, fine.

MR. HENRY BERGMANN: Well, Your Honor, Mr. Jackson

didn't advise me he was planning on filing a motion, his own motion.

THE COURT: As far as the Court is concerned, Mr. Bergmann, you are the attorney in this case and any motion that is to be filed is to be filed by you.

MR. BOBBY JOE JACKSON: Just let the record show that he refuses.

THE COURT: You may file those for the record. I will show them filed so the record will have them, but the Court is not going to proceed upon them in the absence of your attorney adopting them as his motions.

The Court has reviewed the Motion for New Trial filed by Mr. Bergmann and I will deny the motion. We have ruled on the, basically the points raised in the motion at trial. Unless there is anything else you wish to argue, Mr. Bergmann.

MR. HENRY BERGMANN: No, Your Honor."

On the date of the hearing the defendant filed a "Pro Se Amended Motion for New Trial." We do not find in the record anything to suggest the existence of any other *pro se* motion for a new trial. The motion makes various claims, including the following in paragraph eight:

"Actions of Defendant's counsel had adversely affected that [*sic*] of the Defendant.

a. Counsel neglected to present evidence in trial that would have affected the decision of the jury.

b. Counsel neglected to subpeona [*sic*] witnesses for the Defendant.

c. Counsel failed to properly cross-examine state's witnesses.

d. Counsel neglected to consult with Defendant before, during and after trial.

e. Counsel failed to file proper motions in this Court that would have affected Defendant's case."

On appeal the defendant contends that the court erred in refusing to rule on the *pro se* post-trial motion and in failing to appoint new counsel for defendant for purposes of the motion. Defendant argues that defense counsel "was placed in the untenable position of adopting the defendant's motion and arguing to the court that he had provided the defendant ineffective assistance of counsel, or of following his natural inclinations to protect his reputation, and thereby deprive the defendant of an opportunity to have the judge consider defendant's allegations and make a fuller record." Relying in part upon *People v. Krankel* (1984), 102 Ill. 2d 181, 464 N.E.2d 1045, the defendant asserts that new counsel, unburdened by a conflict of interest, should

have been appointed to present the defendant's claims to the trial court so that the court could determine whether the defendant was denied effective representation or was entitled to some form of relief. The defendant argues further that even if the trial court were not required to appoint new counsel at the time, it was required to consider the defendant's *pro se* motion without defense counsel's adoption of it.

In the absence of a ruling by the trial court on the defendant's *pro se* post-trial motion, we decline to consider its merits and accordingly remand the cause to the trial court for a ruling on the motion, including a determination as to the claim of ineffective assistance of counsel in accord with the guidelines set forth in *People v. Jackson* (1985), 131 Ill. App. 3d 128, 139, 474 N.E.2d 466, 474-75, in which the defendant had alleged ineffective assistance of counsel in a post-trial letter to the trial court:

"In our opinion, the problems created by a defendant who, during post-trial proceedings, claims that his attorney has ineffectively represented him during trial, are best met by the objective tests set forth in [*People v.*] *Johnson* [(1981), 98 Ill. App. 3d 228, 424 N.E.2d 610]. The trial court should examine the factual matters underlying the defendant's claim. There are several matters to be determined. If the claim goes to matters of trial tactics or strategy, the defendant's claim should be found spurious and his request for new counsel denied. This was the case in *Johnson*. If, however, the factual matters show possible neglect of the defendant's case, the court should appoint new counsel who can undertake an independent evaluation of the defendant's claim and present the matter to the court from a detached, yet adversarial, position. This was the case in *Krankel*, where defendant alleged that his attorney failed to interview an alibi witness.

It seems elementary that during the evaluation of defendant's claims, some interchange between the court and the defendant's attorney must take place. Such an interchange is necessary to avoid potential abuses by those who would falsely claim situations of the *Krankel* type. It is simply stretching matters beyond credulity to claim that in responding to the court's inquiries a defendant's attorney has somehow taken a position adverse to his client's best interest. This is not to say that defense counsel should be able to undertake lengthy legal arguments pertaining to the fact that his representation as performed conformed to limits of proper advocacy as delineated by

case law. Rather, counsel may simply answer questions and explain the facts and circumstances surrounding matters which are alleged by his client to demonstrate that he was not adequately represented at trial."

As the supreme court pointed out in *Krankel*, if, after the hearing, the trial court finds that the defendant did not, in fact, receive effective assistance of counsel, the court shall order a new trial. If, however, the trial court determines that the defendant received the effective assistance of counsel and otherwise denies the post-trial motion, the court shall deny a new trial and leave standing defendant's conviction and sentence for theft from the person. If the trial court denies the defendant a new trial, he can still appeal on the basis of his assertion of the ineffective assistance of counsel or his other claims made in the *pro se* post-trial motion.

Affirmed in part; reversed and remanded in part.

WELCH and HARRISON, JJ., concur.

