NOTICE
Decision filed 06/13/16. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2016 IL App (5th) 130589

NO. 5-13-0589

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jasper County. |
| | ) | |
| v. | ) | No. 13-CF-8 |
| | ) | |
| MICHAEL A. SHAMHART, | ) | Honorable |
| | ) | S. Gene Schwarm, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court, with opinion.
Justices Goldenhersh and Chapman concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a jury trial, the defendant, Michael A. Shamhart, was found guilty of unlawful possession of methamphetamine manufacturing material, participation in methamphetamine manufacturing, and possession of a substance containing methamphetamine. He was sentenced to prison terms of 7 years, 15 years, and 5 years, respectively, and the sentences were concurrent. On appeal, the defendant contends that the trial court committed reversible error when it refused to permit him to present evidence of ineffective assistance of counsel by his trial attorney at a hearing on the merits of his posttrial motions. For reasons that follow, we vacate the orders of the

1

circuit court denying the defendant's posttrial motions, and we remand this cause with directions.

¶ 2　　　　　　　　BACKGROUND AND PROCEDURAL HISTORY

¶ 3　　On January 23, 2013, at approximately 8:39 p.m., a confidential source of Newton police officer Gregory Coker, who was later identified as Bradley Hazel, participated in a "controlled buy" of methamphetamine from the defendant at the defendant's residence in Newton, Illinois. A short time later that evening, Officer Coker obtained a warrant to search the defendant's home, and Officer Coker and other Newton police officers went to the defendant's residence to execute the warrant. During the search, officers discovered some of the "buy money" that was used in the controlled buy, methamphetamine precursors, and a variety of items associated with the manufacture of methamphetamine. The defendant was taken into custody that evening.

¶ 4　　On January 24, 2013, the defendant was charged with methamphetamine delivery (720 ILCS 646/55 (West 2012)), unlawful possession of methamphetamine manufacturing material (720 ILCS 646/30 (West 2012)), and unlawful possession of methamphetamine precursor (720 ILCS 646/20(a)(2)(A) (West 2012)). A few weeks later, the State added two counts of aggravated participation in methamphetamine manufacturing (720 ILCS 646/15(b)(1) (West 2012)) and one count of use of property (720 ILCS 646/35 (West 2012)).

¶ 5　　The defendant's trial attorney, Ken Gano, filed a motion to quash the search warrant and to suppress the evidence obtained through the search, and requested a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). The court heard

arguments on the motion and took the matter under submission. A few days later, the court entered an order denying the motion to quash. The court specifically found that the motion was not supported by a sworn affidavit or a statement of supporting reasons, that the motion was not supported by an offer of proof, and that the motion failed to specify what portions of Officer Coker's warrant affidavit were false, misleading, or based upon a reckless disregard for the truth. The court concluded that the motion failed to meet any of the threshold requirements of *Franks* and was deficient. The court denied the motion on its face.

¶ 6 The jury trial commenced on July 8, 2013. On the first day of trial, the State filed an amended information, amending two of the previously filed counts, adding a new count, and dismissing other counts. The amended information charged the defendant with unlawful possession of methamphetamine manufacturing material (720 ILCS 646/30 (West 2012)), participation in methamphetamine manufacturing (720 ILCS 646/15 (West 2012)), and possession of a substance containing methamphetamine (720 ILCS 646/60(b) (West 2012)). The defendant's attorney did not object to the filing of the amended information, and the State proceeded to trial on those three charges.

¶ 7 The State's first witness was Officer Coker, an eight-year veteran of the Newton police department. Officer Coker testified that on the afternoon of January 23, 2013, he was approached by a confidential source, Bradley Hazel, who indicated that he could buy methamphetamine from the defendant. Officer Coker was familiar with the defendant. Officer Coker testified that based upon Hazel's representations regarding the defendant's methamphetamine manufacturing activities, he and other Newton police officers arranged

3

for Hazel to make a "controlled buy" at the defendant's residence that evening. Officer Coker stated that he marked and recorded the serial numbers on six $20 bills, and provided Hazel with $120 in marked bills. Officer Coker testified that Hazel went into the defendant's residence and later returned with two baggies, each containing a white substance. Field tests performed on the white substance in each baggie were positive for methamphetamine.

¶ 8 While other officers conducted surveillance of the defendant's house, Officer Coker and Hazel went to obtain a search warrant. They met with the State's Attorney, and a sworn warrant application was prepared and presented to Judge Daniel Hartigan. The application provided the factual basis for the search warrant and described, in detail, the "controlled buy." The application also specifically stated that "C/S has provided law enforcement with credible, truthful information in the past in connection with drug investigations." After considering the warrant application and affidavit, Judge Hartigan issued a search warrant at 10:30 p.m. that same evening. The warrant directed the officers to search the defendant's home. It further directed the officers to seize: "methamphetamine, methamphetamine precursors, methamphetamine equipment, illicit drugs, drug paraphernalia, weight scales, plastic baggies, containers commonly associated with the storage or use of said contraband which have been used in the commission of, or which constitute evidence of the offenses of any and all violations of the Methamphetamine Control and Community Protection Act, 720 ILCS 646 *et seq*."

¶ 9 Officer Coker testified that he proceeded to the defendant's residence address to meet with other officers and execute the warrant. When the officers arrived, they

4

knocked on the defendant's back door and announced they had a search warrant. The defendant did not immediately open the door, so the officers let themselves in. At that time, the defendant and his ex-wife, Billie Shamhart, were taken into custody. Officer Coker testified that several officers assisted in the search of the defendant's house. During the search, officers discovered three of the marked $20 bills that had been provided to Hazel for the controlled buy. Officers also discovered a metal grinder, plastic baggies containing white pills, and various forms of drug paraphernalia, including glass pipes, syringes, a box of needles, an eyeglass case containing a spoon and a syringe, and a digital scale hidden inside an iPhone case, among other things. Officers also searched a safe, which they discovered inside the house. The safe contained two plastic bottles of liquid, 1.97 grams of cannabis, and two plastic baggies containing white substances which, based upon field testing, were positive for methamphetamine.

¶ 10    Officer Coker testified that he had received training in, and had prior experience with, the investigation of methamphetamine manufacturing activities, and that based on his training and experience, he believed that the defendant had converted his home into a laboratory to manufacture methamphetamine (meth lab). Officer Coker noted that there were special hazards posed by the chemicals and the equipment associated with the manufacture of methamphetamine. Because of the potential hazards, Special Agent William Blackburn, an officer with the Illinois State Police, was called in to assist with the handling and disposal of the meth lab and other hazardous materials found in the home.

5

¶ 11    During cross-examination, the defendant's trial attorney, Ken Gano (Gano), attempted to question Officer Coker about his confidential source. Gano indicated that he wanted to test the credibility and reliability of the confidential source. The State objected to the inquiry and argued that the issue had been previously resolved when the court denied the defendant's motion to suppress the search warrant. The court sustained the objection. Gano then focused his cross-examination on the safe which was discovered at the defendant's home. Gano asked whether the safe was locked or unlocked when it was found. Overall, there was contradictory testimony regarding the safe. One officer testified the safe was forced open, maintained as evidence, and secured in the evidence room, while another indicated it had been destroyed.

¶ 12    Agent Blackburn, an officer with Illinois State Police Meth Response Team, also testified during the State's case. Agent Blackburn noted that the Meth Response Team is a specialized unit and that he had received special training in the processing of methamphetamine labs from the United States Drug Enforcement Agency. Agent Blackburn explained that many of the chemicals used to make methamphetamine are hazardous and volatile in nature, and, because of that, he often assisted police departments in Southern Illinois with the disposal of chemicals and equipment used in the production of methamphetamine. Agent Blackburn stated that he routinely conducts field tests on such chemicals before disposing of them. Agent Blackburn further testified that he was called to assist in the disposal of the defendant's meth lab, and that he conducted field tests on some of the chemicals before disposing of them. Agent Blackburn explained that there were different methods for manufacturing methamphetamine. He

described the "one-pot" method for manufacturing methamphetamine, noting that anhydrous ammonia is not one of the chemicals used in the "one-pot" method. Agent Blackburn testified that he was able to observe the materials and equipment inside the defendant's home, and that, based upon his observations and his experience, he concluded that the defendant used the "one-pot" method to manufacture methamphetamine. Agent Blackburn then explained why the items seized from the defendant's home were an integral part of the "one-pot" manufacturing process.

¶ 13    On the second day of trial, the State called additional police officers who had participated in the search to testify about the items seized and to provide a proper chain of custody. Documentary photographs taken during the search were also admitted into evidence. The final witness for the State was Aaron Roemer, a forensic scientist with the Illinois State Police Crime Laboratory. Roemer was qualified as an expert witness and was allowed to render an opinion that the two baggies containing white powder, which were delivered to the lab for analysis, contained methamphetamine.

¶ 14    At the conclusion of the State's case, attorney Gano moved for a directed verdict, which was denied. Gano then notified the court that defendant had decided not to testify on his own behalf, and the court admonished the defendant regarding his right to do so. Gano then sought to call Officer Coker as a witness in the defendant's case in order to ask about the confidential source. The State renewed its objection to the line of inquiry, again claiming, "[t]hese issues were raised at the *Franks* motion hearing in pretrial–in the pretrial evidentiary hearing, and the Court sustained or denied the motion." The court sustained the State's objection, stating this was impeachment on a collateral issue and not

7

relevant. Gano then called several witnesses who had been in the defendant's home a day or two before January 23, 2013. All of these witnesses testified that they saw no indication that the defendant was engaging in the manufacture of methamphetamine. Gano called Billie Shamhart, the defendant's ex-wife, as the final witness. Mrs. Shamhart testified that she did not see any of the paraphernalia seized by the police while occupying the home on Van Buren Street. The defense then rested.

¶ 15   At the close of the evidence, the jury received instructions from the court and retired to deliberate. According to the record, the jury returned its verdicts in slightly less than 30 minutes. The jury found that the defendant was guilty of unlawful possession of methamphetamine manufacturing material, participation in methamphetamine manufacturing, and possession of a substance containing methamphetamine. The court accepted the verdicts and scheduled sentencing for August 15, 2013.

¶ 16   On July 26, 2013, attorney Gano filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. In the motion, the defense claimed that the jury's verdict was against the manifest weight of the evidence; that the motion court erred in denying the *Franks* motion; that the jury pool was tainted because of comments made by one juror during the *voir dire* process; and that the trial court erred in limiting the defendant's ability to cross-examine Officer Coker regarding the circumstances of his encounter with his confidential source, Bradley Hazel. As to the fourth claim of error, the defense indicated that it had been prepared to call Hazel to impeach Officer Coker's testimony, and that the court erred in sustaining the State's objection to this area of inquiry.

8

¶ 17    On that same date, Gano filed a "Memorandum and Request For Direction." In this pleading, attorney Gano indicated that during the course of a telephone conference with the defendant on July 24, 2013, the defendant stated, "You are fired. I want a different attorney." Gano stated that the conversation ended quite abruptly when the "phone line went dead," and that he had no further discussions with the defendant. Gano requested that the court allow him to withdraw as attorney of record or, alternatively, advise him with regard to his future obligations to the defendant.

¶ 18    The defendant filed a letter with the court, dated July 25, 2013, wherein he asked the court "for a new attorney do [*sic*] to the incompetence of my attorney Ken Gano in his representation throught [*sic*] my whole trial." In the letter, the defendant also asserted that Gano failed to offer an adequate defense during trial and failed to object to the State's "last minute" amendment to the charges lodged against him.

¶ 19    On August 9, 2013, the defendant supplemented his prior letter with a *pro se* motion for a new trial. In this motion, the defendant claimed that he was denied effective assistance of counsel as required by the "6th Amendment to the United States Constitution." Attached to the motion were 14 single-spaced, handwritten pages, authored by the defendant. In these pages, the defendant set forth detailed arguments, specifying his contentions of error by the trial court, and his claims of ineffective assistance of his trial attorney, in support of his request for a new trial. Among the many arguments, the defendant stated that he specifically asked his first attorney to file a motion to suppress illegally seized evidence, and that this was never done. The defendant was of the opinion that the safe that was seized from his home had been opened in

9

violation of the fourth amendment, and that a motion to suppress the evidence seized from the safe should have been filed. The defendant also noted that he had asked his next court-appointed attorney to file a motion to suppress, a motion for a bill of particulars, and a motion to dismiss, but "she wouldn't file any of them." He then discussed his difficulties with his trial counsel, Mr. Gano. The defendant began by claiming, "He didn't properly file Franks motion it was denied on its face." The defendant also claimed that Gano did not obtain important information about Bradley Hazel, which could have been used to attack Hazel's credibility as a confidential source.

¶ 20 In the additional pages of the attachment, the defendant alleged that Judge Hartigan should have recused himself from the proceedings because Judge Hartigan had actually represented the defendant when the defendant was a juvenile. The defendant also claimed that because Judge Hartigan had issued the search warrant, he was no longer a neutral participant and should not have heard the *Franks* motion.

¶ 21 During the hearing on August 15, 2013, the court initially entertained Gano's motion for direction. The court asked Gano whether he was asking to withdraw, noting that such motion would need to be supported with specific facts pursuant to Rule 1.16 of the Illinois Rules of Professional Conduct. Ill. R. Prof. Conduct (2010) R. 1.16 (eff. Jan. 1, 2010). After some discussion with the court, Gano stated he believed he had been discharged by the defendant. Gano advised the court that he had been unable to communicate with the defendant, and that the defendant's allegations of ineffective assistance of trial counsel "may adversely affect my ability to give him my 100 percent." Gano requested that he be allowed to withdraw as the defendant's counsel. The court

10

denied Gano's motion and asked Gano to speak with the defendant to determine whether the lines of communication could be reestablished.

¶ 22　On August 23, 2013, Gano filed his formal motion to withdraw. In the first paragraph of his motion, Gano indicated that the defendant, on two occasions, had expressed his desire to discharge Gano. The remaining paragraphs of the motion explained that the defendant had filed a motion alleging Gano was "incompetent, rendering further representation strained and difficult." In the motion, Gano made no admission that his representation of the defendant fell below an objective standard of reasonableness.

¶ 23　On August 26, 2013, the defendant filed a voluminous packet of documents. On the first page of the submission, the defendant asked the trial judge to consider granting a new trial, a new attorney, and a judgment notwithstanding the verdict. The defendant also proposed a sentencing recommendation. In his papers, the defendant provided a detailed statement of his claims of error, including the failure of attorney Gano to file a proper *Franks* motion and the failure to provide a "neutral magistrate" to preside over the proceedings in his case. The defendant also attached a three-page, handwritten statement, entitled "voluntary statement by Bradley W. Hazel." The statement was dated "8-13-13" and was purportedly authored and signed by Bradley Hazel. In this statement, Hazel stated that it was Officer Coker who asked Hazel to make a "controlled buy" from the defendant. Hazel claimed the officer threatened him. Hazel also claimed that he had lied to police about buying methamphetamine from the defendant, and that Hazel had planted evidence in the defendant's home. After a complete confession, Hazel indicated that he

was writing this statement now because he had tried to hang himself in jail, and the defendant, who was also incarcerated, called for help, saving Hazel's life.

¶ 24   On September 4, 2013, the court heard Gano's motion to withdraw. Gano indicated he would stand on the written motion. Gano told the court, "I think the first paragraph is sufficient. The other paragraphs are under the other good causes in accordance with the statute." The court then indicated "that the motion to withdraw states a basis for Mr. Gano to withdraw as attorney for Mr. Shamhart," and granted the motion to withdraw. The court made no specific findings as to what basis it had considered or why Gano was allowed to withdraw. The court stated that it would appoint a new attorney for the defendant. Later that day, the court appointed Lance Freezeland (Freezeland) to represent the defendant in the posttrial proceedings.

¶ 25   Freezeland first appeared on behalf of defendant on September 12, 2013, for a scheduling conference. During the conference, the court scheduled hearings on the pending posttrial motions and set sentencing for November 8, 2013, in order to allow Freezeland adequate time to meet with the defendant and prepare.

¶ 26   On November 8, 2013, the parties appeared for the hearing on the pending posttrial motions. Freezeland chose not to file an amended posttrial motion, but rather proceeded on the posttrial motions that had been filed previously. Freezeland requested that he be allowed to call the defendant as a witness to give testimony in support of the posttrial motions. The court then inquired: "You want to submit evidence in support of your post-trial motions? Let's discuss that before I allow you to proceed with the evidence." This prompted a brief discussion between the court and Freezeland. During

12

the discussion, Freezeland explained that the only way he could prove that the defendant's trial counsel had failed to communicate with the defendant about important matters in his case was to put the defendant on the witness stand. Freezeland also referenced other contentions of error raised in the defendant's posttrial motion and stated that only the defendant could expound further on those contentions. The State objected to the defense's request to call the defendant as a witness. The State argued that the errors raised in the defendant's motion were "extraneous to the record," and that the ineffective assistance of counsel claim was not a matter for a posttrial motion. The court then made a further inquiry of Freezeland, "And, Mr. Freezeland, let me make sure I understand. You are basically looking to present evidence in support of ineffective assistance of counsel?" Freezeland answered affirmatively. The court denied Freezeland's request to have defendant testify. The court then indicated it would take "judicial notice of what Mr. Shamhart has filed in his own behalf. It is in the court file."

¶ 27    Following the ruling, Freezeland proceeded to argue the Gano posttrial motion and the defendant's *pro se* motions, as he explained they were inextricably entwined. Freezeland straightforwardly stated that Gano improperly filed the *Franks* motion, and then made no effort to refile the motion with the proper affidavits and supporting documents, even after the motion was denied based on facial deficiencies. Freezeland pointed out that Gano proceeded to trial and attempted to cross-examine the witnesses regarding the issuance of the search warrant. When the questions were raised regarding the credibility of the confidential source, the court sustained the State's objections and thereby prevented Gano from introducing any evidence related to Hazel and the validity

13

of the search warrant. Additionally, Freezeland argued that there was evidence Hazel was mentally unstable, and that there was now a statement in the court file wherein Hazel admitted he had lied and "set the defendant up" by planting evidence in the defendant's home. Freezeland described how he had met with the defendant, and that they had gone over the 300-plus pages of the record. In doing so, he found himself repeatedly saying, "Well, that should have been raised at trial." During his argument to the court, Freezeland asked:

"[C]an we get before the court evidence of actual innocence? Can we give [defendant] his real swing? His chance at the plate? Or do we confine ourselves to the legal confines of, well, this wasn't raised at trial. That is an issue for appeal. And I know that the ineffective assistance is probably best raised by appeal but, Judge, there were so many things that just weren't done here. And I find myself reading that trial and thinking not only would I have done something different, that is not the standard I realize, not that a different counsel does something different, but it just felt so far below the level of actually giving him an opportunity before this court."

¶ 28 After the attorneys for the State and the defendant had extensively argued their positions, the court denied the defendant's posttrial motions. In its ruling, the court did not specifically address any particular motion. It did not identify any particular issue raised in the motions, except the claim regarding a prospective juror who made comments during *voir dire*. As to that contention, the court noted that the prospective juror was dismissed and did not participate in the trial. The court further noted that there was no

14

motion for mistrial at the time, and that the statements made were not of such import that they tainted the entire jury pool. The court concluded the hearing on the posttrial motions and continued the matter for sentencing.

¶ 29 The sentencing hearing was held on November 14, 2013. During the hearing, the State introduced testimony that the defendant's residence was less than 1000 feet from three active churches in the community. Additionally, as a factor in aggravation, the State offered a transcript of testimony from the defendant's ex-wife to prove that she was pregnant while occupying the home where the methamphetamine lab was located. The defendant offered the testimony of Lucy Ann Marie Piercefield. Ms. Piercefield testified that she had known the defendant since he was eight years old. She asked the court "not to be hard" on the defendant because he never had a chance as a child. The defendant took the stand to introduce a 1985 psychological evaluation. After considering the evidence, the presentence report and an addendum thereto, the arguments of counsel, and a statement made by the defendant, the court sentenced the defendant to concurrent prison terms of 7 years for unlawful possession of methamphetamine manufacturing material, 15 years for participation in methamphetamine manufacturing, and 5 years for possession of a substance containing methamphetamine.

¶ 30                                        ANALYSIS

¶ 31 On appeal, the defendant raises a single issue: Whether the trial court committed reversible error when it refused to permit the defendant to present evidence of ineffective assistance of trial counsel at the hearing on the merits of his posttrial motions. Because the adequacy of the trial court's inquiry into the defendant's allegations of ineffective

15

assistance of trial counsel presents a question of law, our review is *de novo*. *People v. Vargas*, 409 Ill. App. 3d 790, 801, 949 N.E.2d 238, 249 (2011).

¶ 32 The defendant shapes his argument by claiming that the matter before us is related to the issue raised in *People v. Krankel*, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984). In *Krankel*, the defendant filed a *pro se* posttrial motion wherein he alleged ineffective assistance of counsel. On review, the Illinois Supreme Court held that the failure to appoint new counsel to argue the defendant's *pro se* motion for a new trial was error, and it remanded the cause for a new hearing on the ineffective assistance of counsel claim. *Krankel*, 102 Ill. 2d at 189, 464 N.E.2d at 1049. Since *Krankel* was decided, the courts have developed a common law procedure that is triggered when a defendant raises a *pro se* posttrial claim of ineffective assistance of trial counsel. See *People v. Jolly*, 2014 IL 117142, ¶ 29, 25 N.E.3d 1127. Under the rule that has been developed from *Krankel* and its progeny, new counsel is not automatically appointed when an ineffective assistance of counsel claim is raised. *Jolly*, 2014 IL 117142, ¶ 29; *People v. Moore*, 207 Ill. 2d 68, 77, 797 N.E.2d 631, 637 (2003).

> "Rather, when a defendant presents a *pro se* posttrial claim of ineffective assistance of counsel, the trial court should first examine the factual basis of the defendant's claim. If the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion. However, if the allegations show possible neglect of the case, new counsel should be appointed. [Citations.] The new counsel would then represent the defendant at the hearing on the defendant's

16

*pro se* claim of ineffective assistance." *Moore*, 207 Ill. 2d at 77-78, 797 N.E.2d at 637.

¶ 33    Contrary to the arguments made by the defendant on appeal, the trial court made no determination regarding the defendant's claims of ineffective assistance of counsel with regard to Gano.  The court simply allowed Gano to withdraw, without making any finding that Gano's representation fell below an objective standard of reasonableness.  The court then appointed Freezeland to represent the defendant in the posttrial proceedings.  In this case, the defendant was the beneficiary of new counsel, without the findings that would have been required during a *Krankel* inquiry.  Therefore, the narrow issue before this court is whether the trial court, after appointing new counsel without having gone through the *Krankel* inquiry, erred in failing to grant an evidentiary hearing on the defendant's posttrial allegations of ineffective assistance of trial counsel.

¶ 34    The record in this case shows that the defendant meticulously itemized his *pro se* claims of ineffective assistance of counsel, supporting some of his arguments with legal citations.  In his papers, the defendant continually maintained that the *Franks* motion had been denied because it was filed incorrectly.  Given the court's findings regarding the deficiencies in the motion, and the fact that trial counsel did not file an amended motion following the court's ruling, this allegation has some support in the record.  Another matter, of equal importance, is the handwritten statement purportedly authored by Bradley Hazel.  In this statement, Hazel admits that he lied to the police and planted evidence that was used to convict the defendant.  The record shows that throughout the course of the proceedings, the defendant sent letters to the court claiming that Hazel's

17

credibility should have been attacked and that a motion to dismiss and/or a motion to suppress the evidence should have been filed. Nevertheless, the only motion filed was the defective *Franks* motion. After reviewing the record, we conclude that even if the defendant's claims are ultimately found to be without merit, the defendant should have been afforded the opportunity to specify and support his complaints at a hearing on the merits of his claims. In this case, the defendant's motions were "precipitously and prematurely denied." *People v. Robinson*, 157 Ill. 2d 68, 86, 623 N.E.2d 352, 361 (1993).

¶ 35   Mr. Freezeland not only afforded the defendant a "fresh look" at the evidence, but he was also willing to openly declare that the defendant's trial counsel failed to adequately represent the defendant. When Freezeland attempted to introduce evidence regarding Gano's shortcomings, the court was under the mistaken impression that no evidence related to the defendant's ineffective assistance of counsel claims could be introduced during the hearing on the defendant's posttrial motions.

¶ 36   Based on the record, we find that the defendant is entitled to an evidentiary hearing and a determination of the merits of the defendant's ineffective assistance of counsel claims. *People v. Jackson*, 158 Ill. App. 3d 394, 401, 511 N.E.2d 923, 927 (1987). The goal of this proceeding is to allow the trial court to give full consideration to the defendant's allegations. The court should examine the factual matters underlying the defendant's claims. If, after a hearing, the court finds that the defendant did not receive effective assistance of counsel, based upon one or more of counsel's alleged failures to present the issues claimed in all of the pending posttrial motions, then the court shall

order a new trial. *Jackson*, 158 Ill. App. 3d at 402, 511 N.E.2d at 928. If, however, the court determines that the allegations amount to trial strategy and that the defendant received effective assistance of counsel, the court shall deny a new trial and leave standing the defendant's convictions and sentences. *Jackson*, 158 Ill. App. 3d at 402, 511 N.E.2d at 928. Regardless of the court's determination, we anticipate that it will support its ruling with specific findings so that the record is complete.

¶ 37    In light of our remand, we believe it necessary to briefly address the concept of judicial notice. During the hearing on the posttrial motions, the court indicated it would take "judicial notice" of "what Mr. Shamhart has filed in his own hand or filed in his own behalf." In its brief, the defendant argues that this was an inadequate substitute for an evidentiary hearing on his posttrial motions. In its brief, the State posits that the defendant:

> "likens the post-trial motion hearing here to a post-*Krankel* hearing where new counsel is presenting a defendant's claims of trial counsel's alleged ineffectiveness. Although there is certainly no quarrel with the proposition that a court should allow a defendant to present evidence in support of a claim of ineffective assistance of counsel, even if that evidence is *de hors* the record, it appears from the record here that whatever the defendant wanted to present was, in fact, admitted into evidence."

¶ 38    The State then argues that because the court took judicial notice of the documents filed by the defendant in support of his *pro se* motions, including the statement by

19

Bradley Hazel, that "the defendant's articulated evidentiary goals were achieved by way of judicial notice." We disagree.

¶ 39 Rule 201 of the Illinois Rules of Evidence (Ill. R. Evid. 201 (eff. Jan. 1, 2011)) governs those matters subject to judicial notice. Specifically, Rule 201(b) requires that "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Ill. R. Evid. 201(b) (eff. Jan. 1, 2011). Here, the documents filed by the defendant raised a multitude of issues, including claims that the defendant was not adequately informed of certain matters by trial counsel, that the defendant had requested, on numerous occasions, that certain motions be filed on his behalf, that Hazel's background was not adequately investigated, and that Hazel had submitted his own statement admitting he planted evidence in the defendant's home. Indeed, attorney Freezeland's arguments supported many of the allegations. In light of the defendant's allegations, we do not believe the State would stand idly by and have no response, thereby conceding that the defendant's allegations were true. In this case, the factual allegations made by the defendant were in dispute, and, therefore, were not proper subjects for judicial notice. The court could have taken notice that the defendant had filed documents, but it could not have taken judicial notice of the content of the documents, as that content was disputed. Certainly, had the court taken judicial notice of the contents, it would have had to grant a new trial.

¶ 40                                    CONCLUSION

¶ 41    In conclusion, the trial court conducted no inquiry of any sort into the defendant's allegations of ineffective assistance of counsel. Instead, the court concluded that the defendant's claim of ineffective assistance of counsel could be resolved by the appointment of different counsel on appeal. We conclude this was error. The court should have allowed the defendant an evidentiary hearing on the defendant's posttrial motions in order to allow the court the opportunity to fully investigate the defendant's claims.

¶ 42    For the reasons stated, we hereby vacate the circuit court's orders denying the motion for new trial or judgment notwithstanding the verdict filed by Gano, and the defendant's *pro se* posttrial motions, and we remand this cause for an evidentiary hearing on the pending posttrial motions. The defendant, upon timely request, shall be allowed to file an amended posttrial motion, and the hearing on the posttrial motions shall proceed in a manner consistent with this opinion.

¶ 43    Orders vacated; remanded with directions.

2016 IL App (5th) 130589

NO. 5-13-0589

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jasper County. |
| | ) | |
| v. | ) | No. 13-CF-8 |
| | ) | |
| MICHAEL A. SHAMHART, | ) | Honorable |
| | ) | S. Gene Schwarm, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

**Opinion Filed:**    June 13, 2016

_____

**Justices:**    Honorable Judy L. Cates, J.

         Honorable Richard P. Goldenhersh, J., and
         Honorable Melissa A. Chapman, J.,
         Concur

_____

**Attorneys**   Michael J. Pelletier, State Appellate Defender, Ellen J. Curry,
**for**      Deputy Defender, Richard J. Whitney, Assistant Appellate Defender,
**Appellant**   Office of the State Appellate Defender, Fifth Judicial District, 909
         Water Tower Circle, Mt. Vernon, IL 62864

_____

**Attorneys**   Hon. Chad Miller, State's Attorney, Jasper County Courthouse, 100
**for**      West Jourdan, Newton, IL 62448; Patrick Delfino, Director, Stephen
**Appellee**    E. Norris, Deputy Director, Patrick D. Daly, Staff Attorney, Office of
         the State's Attorneys Appellate Prosecutor, Fifth District Office, 730 E.
         Illinois Highway 15, Suite 2, P.O. Box 2249, Mt. Vernon, IL 62864

_____